UNITED STATES, Appellee

v

JASPER C. SCHUERING, Private, U.S.
Marine Corps Reserve, Appellant

16 USCMA 324, 36 CMR 480

No. 19,335

August 19, 1966

*Captain John P. Gleeson,* USN, argued the cause for Appellant, Accused.
*Colonel J. E. Hanthorn,* USMC, argued the cause for Appellee, United States.

## Opinion

QUINN, Chief Judge:

This appeal presents a question as to the right of the military to try the accused for the offense charged.

The accused is a member of the Marine Corps Reserve. On October 12, 1963, he voluntarily accepted orders assigning him to the 3d Motor Transport Maintenance Company, USMCR, Sacramento, California, a unit in the Organized Marine Corps Reserve, for inactive duty training. The order specified that during performance of "regular drills" and "periods of inactive duty training" he was subject to the Uniform Code of Military Justice. An extract from the accused's records indicates he attended drills on one weekend each month. On Sunday, July 18, 1965, during a regular scheduled drill period, the company commander was informed that three Government micrometers were missing. Two of the missing articles were discovered in the

accused's car. Later that day, during office hours, the accused appeared before the commander. After being advised of his rights under Article 31, Uniform Code of Military Justice, 10 USC § 831, he admitted he took two of the micrometers. The accused expressed his willingness to accept nonjudicial punishment under Article 15 of the Uniform Code, supra, 10 USC § 815, but the commander decided to refer the matter to the Director, 12th Marine Corps District, with a recommendation for trial by special court-martial. He directed the accused to "wait outside the office" while a formal charge sheet was prepared. A charge sheet was prepared. About the same time, a telephone call was made to the adjutant of the 12th Marine Corps District. He advised that the accused could be released to his home following the regular scheduled drill. The accused was informed that his "release from drill" was not a release "from jurisdiction under the UCMJ," and if the District Director referred "his case to trial" he "would be ordered to active duty for trial by court-martial." The accused "was not placed under any type of restraint" and was allowed to "secure from drill at the regular time," which was about 4:30.

At the next regular drill weekend in August, the accused was present for duty. He was called to office hours conducted by Colonel Arnold W. Harris, Director, 12th Marine Corps District. Again, he admitted he took two of the micrometers. On September 1, Colonel Harris referred the charge to trial by special court-martial. The accused was served with a copy of the charge the next day. The record does not show where the service was made. Neither September 1, nor September 2, was a drill day. On September 21, by endorsement to orders dated August 31, the accused was ordered to "temporary active duty" for one day, September 29, for trial by special court-martial. Another endorsement to the orders provided that on completion of the one day of active duty, the accused would "return to . . . [his] home and stand released from active duty."

A further form endorsement provides for acknowledgment of receipt of the orders, but the signature space is blank. On September 29, which also was not a drill day, the accused reported as directed and shortly thereafter was arraigned before a special court-martial on a charge of larceny of Government property of a value of $40.66. He entered a plea of guilty and was sentenced to a bad-conduct discharge, confinement at hard labor for six months and partial forfeiture for a like period.

Although he raised no jurisdictional issue at trial, after the trial, defense counsel filed a brief challenging the right of the court-martial to try the accused for the offense charged. He contended that termination of the drill period during which the offense was committed ended the military's right to prosecute the accused. The issue was resolved against the accused by the supervisory authority; and it was similarly decided by the board of review. Both based the decision on the ground that jurisdiction had attached on July 18, and, therefore, continued through the day of trial.

A reservist is subject to the Uniform Code of Military Justice only under limited circumstances. These are as follows: (1) He must actually be "on inactive duty training"; (2) the training must be performed pursuant to written orders; (3) the orders must specify that he is amenable to the Uniform Code during his training or drill periods; and (4) the orders must have voluntarily been accepted by him. Article 2(3), Code, supra, 10 USC § 802. At the time of the commission and discovery of the theft, all these statutory conditions for military jurisdiction were present. Had the accused been tried then and there, the court-martial would have had jurisdiction over his person and the offense. Cf. United States v Hooper, 9 USCMA 637, 26 CMR 417. However, he was not so tried. He contends that as soon as the particular period of inactive training ended, military jurisdiction over the offense also ended; and it was not revived by his later return to a military status. The

contention is rooted in such familiar cases as Hirshberg v Cooke, 336 US 210, 93 L ed 621, 69 S Ct 530 (1949), and United States v Brown, 12 USCMA 693, 31 CMR 279.

Military jurisdiction has two aspects. First, the accused must be subject to military law at the time of the commission of the offense and at the time of trial. Secondly, the offense must be committed at a time when the accused is amenable to the Uniform Code. The necessity for concurrence of these two elements results in a number of problems. If, for example, the offense is committed while the accused is in a military status, but, before discovery of the offense, he is formally and completely separated from all service ties, a court-martial has no power to try him for the offense.[1] Toth v Quarles, 350 US 11, 100 L ed 8, 76 S Ct 1 (1955). However, later reacquisition of a military status revives jurisdiction over both the person and the offense committed in the previous period of service. United States v Gallagher, 7 USCMA 506, 22 CMR 296, concurring opinions, Chief Judge Quinn and Judge Ferguson; United States v Wheeler, 10 USCMA 646, 28 CMR 212. Revival or reestablishment of jurisdiction over the offense may be limited by Article 3(a) of the Uniform Code, supra, 10 USC § 803. The Article provides that a person is not "relieved from amenability to trial" as to an offense punishable by confinement for five years or more, which is not prosecutable in a civilian Federal or State court. See United States v Steidley, 14 USCMA 108, 33 CMR 320. The offense for which the accused was tried does not satisfy these conditions.[2] Consequently, if it falls within the scope of the Article, the fact that the accused was on active duty at the time of trial would not give the court-martial jurisdiction over the offense. United States v Frayer, 11 USCMA 600, 29 CMR 416. As we construe the Article, and related provisions of law, the limitations therein are not applicable to a reservist in the position of the accused.

Article 3(a) had its source in the Hirshberg case. It "was intended by Congress," we pointed out, "to confer upon the military the power to prosecute an accused after re-enlistment for an offense committed before discharge, which the Supreme Court of the United States had found to be lacking in Hirshberg v Cooke." United States v Frayer, supra, page 602. In Hirshberg, the Supreme Court reviewed the history of the effect of a discharge and determined there existed a "long-accepted understanding" that jurisdiction over an offense committed in a previous enlistment was not revived by the reenlistment of the accused. Both before and after the Uniform Code, the statutory position of a reservist like this accused was entirely different from that of a person discharged or otherwise separated from the service. He was never free from liability to prosecution in one training period for an offense committed in an earlier period. Id., page 219.

Under the Armed Forces Reserve Act, now 10 USC § 270, a reservist, like the accused, is required to participate in at least forty-eight scheduled drills or training periods, and serve on active duty for training for not more than seventeen days each year. As pointed out earlier, the Uniform Code restricts the reservist's amenability to its provisions to such times as he is actually "on active duty for training" authorized by appropriate orders or when called to active duty for training. Article 2(1), (3), Code, supra.

---

[1] We recognize, of course, that in some cases, such as retired personnel entitled to pay and certain reservists, relief from active duty does not sever all military ties. Article 2, Uniform Code of Military Justice, 10 USC § 802; United States v Hooper, 9 USCMA 637, 26 CMR 417.

[2] The theft involved United States Government property, and was triable in a United States district court. 18 USC § 641. Also, the value of the property was less than $50.00; as a result, the maximum confinement to which the accused was subject was only one year. Manual for Courts-Martial, United States, 1951, paragraph 127 c, Section A, page 223.

It is apparent, therefore, that the reservist is continuously subject to successive periods during which he is amenable to the Uniform Code. Previously, a similar situation prevailed as to Navy reservists. The then existing law expressly provided that "disciplinary action for an offense committed" in one drill or training period "shall not be barred by reason of release from duty status." Naval Reserve Act of 1938, 52 Stat 1180, section 301, 34 USC (1946 ed) § 855. There was no limitation as to the kind of offense that could be prosecuted on the accused's reacquisition of a military status. Article 3(a) was not intended to change this concept, and nothing in its language precludes court-martial at a later drill period for an offense committed in an earlier drill period. The problem to which Congress addressed itself, in enacting Article 3(a), was the loss of military jurisdiction by discharge or separation from the service; and it solved the problem by removing the bar to the exercise of jurisdiction, as to " 'major' " offenses. See United States v Frayer, supra, page 602. Article 3(a) was designed to enlarge jurisdiction. It would defeat that purpose to convert the Article, as the accused would have us do, into a restriction on the general rule that a court has jurisdiction to try a person then subject to its jurisdiction for an offense committed by him at the time the court had jurisdiction over both the offense and his person. United States v Gallagher, supra.

Reservists, like the accused, are subject to the Uniform Code during each drill period of the term provided by their orders. Common sense and the dictates of the law, such as the requirement of probable cause for an arrest, make it apparent that in many, many cases it would be practically impossible to prosecute an offender for a crime committed in a particular drill period, if the limitations of Article 3(a) were applicable to him. There is, as we have noted, no "long-accepted understanding" that termination of a drill period bars prosecution in a later drill period for an offense committed earlier. In fact, the law of the Navy, previous to the Uniform Code of Military Justice, was to the contrary. We have no inclination, therefore, to pervert a statute intended to liberalize prosecution into a statute curtailing prosecution. Since there is no statute designed to operate in this area, it is appropriate to apply the general rule that a court-martial may try an accused for an offense committed when he was subject to military law, if he is also subject to such law at the time of trial, notwithstanding there was an interval of time between the offense and the trial when he was not amenable to military law. United States v Gallagher, supra. We are aware that Marine Corps Order 1600R.5 announces a contrary principle. Paragraph 4 of the order provides, in part, that "[d]isciplinary action, if taken, *must* be initiated against a reservist at the drill the offense is committed. Action cannot be initiated on a drill or non-drill date for an offense committed at a prior drill." The order may perhaps constitute a valid service restriction on the *exercise* of jurisdiction, but it does not detract from the existence of the general power. See United States v Gray, 6 USCMA 615, 20 CMR 331.

We hold, therefore, that ▬▬▬ ▬ in each period of training duty the accused is liable to trial by court-martial for an offense committed by him when subject to military law, without regard to the provisions of Article 3(a), and subject only to the statute of limitations for the offense charged. See United States v Noble, 13 USCMA 413, 32 CMR 413; United States v Martin, 10 USCMA 636, 28 CMR 202.

The record shows the accused was not tried during a training session, but on a day when he was ordered to active duty for trial by court-martial. These orders were described by trial counsel as the "jurisdictional" authority for the accused's presence. The question then is whether the orders legally conferred a military status upon the accused.[3]

---

[3] Posing the question in this form makes it unnecessary to consider

328

Two separate orders directed the accused to report for "temporary active duty" for one day "in connection with a Special Court-Martial." One of the orders was addressed only to the accused. The authority cited for its issuance was "MCO P1001R.43 (RESSOP)." The reference is a Marine Corps Reserve pamphlet promulgated as an order establishing standing operating procedures for reserve activities. As noted earlier, a reservist like the accused is, by statute, required to participate in at least forty-eight scheduled drill or training periods during the year, and to serve for a limited time on active duty for training. Apart from war or declaration of national emergency, neither of which are present in this case, the circumstances under which he may be called to active duty are prescribed in the Marine Corps Manual, paragraph 1141.3a, as follows:

"(6) A member of the Marine Corps Reserve in an active status may be ordered to and required to perform active duty or active duty for training, without his consent for a period not to exceed 15 days annually.

"(7) A member of the Ready Reserve who is required by law and regulations to participate satisfactorily in reserve training and who in any year fails to perform such training duty satisfactorily, may be ordered without his consent to perform additional active duty for training for not more than 45 days.

"(8) A member of the Ready, Standby, or Retired Reserve may be ordered to active duty or active duty for training at any time with his consent, subject to such policies, programs, and conditions as are approved by the Commandant of the Marine Corps."

These provisions are implemented in the order prescribing the standard procedures for reserve programs.

Under MCO P1001R.43, change 2, page xix, March 23, 1965, temporary active duty is performed ■■■■■■■ ■ "under orders authorized by" the Commandant of the Marine Corps; it is *"not for the purpose of receiving training."* (Emphasis supplied.) There is no provision in the pamphlet that can reasonably be construed to authorize the call of a mandatory participant in the reserve program, without his consent, to temporary active duty. Chapter 7 of the basic pamphlet, which deals with individual active duty, specifically provides that indivdual active duty normally "will not be authorized in lieu of" the required annual training duty. *Id.,* paragraph 7001.3. Nor is individual active duty involuntary; it is requested by the reservist, and the request must be approved by the Commandant of the Marine Corps. *Id.,* paragraphs 7050.1a, 7053. It is also apparent that MCO P1001R.43 does not support the order issued to the accused as a call to active duty for training because he failed to participate satisfactorily in the training duties required of him. It prescribes enforcement measures which include a warning to the reservist by the commanding officer, a report to the District Director, and the issuance of an order to the reservist containing a specific finding that he failed to participate satisfactorily. *Id.,* paragraph 2201. The order for temporary duty does not conform in any particular to MCO P1001R.43. It must be presumed, therefore, that the required finding of unsatisfactory service was not made. It follows that the temporary duty order issued to the accused was insufficient to make him subject to military law. Cf. Article 2(1), Code, supra.

The second order in issue is addressed to the accused and a number of reserve officers and enlisted men. Apparently they were to constitute the special court-martial that was to try the accused. The cited authority for this order is "MCO 5420.7A." This

whether action was initiated against the accused on a non-drill date, in violation of Marine Corps Order 1600R.5, paragraph 4, February 19, 1965.

is a Marine Corps order prescribing the procedure for obtaining ▪ *reserve officers* for membership on certain boards, such as retention, promotion, or retirement boards. A form of endorsement provides for acknowledgment of receipt of the orders by the addressee, but the space for the signature of the accused is blank. Patently, this Marine Corps order is not authority to place the accused on temporary active duty, without his consent and for the sole purpose of court-martial. Its purpose is to obtain reserve officers when there are "insufficient reserve officers of appropriate grade . . . on active duty in the area to constitute a board." Such reserve officers can be ordered to temporary active duty "with their consent." *Id.*, paragraph 4. Assuming MCO 5420.7A authorizes the call of a reserve officer for membership on a court-martial, the accused is not an officer, and there is no evidence in the record to show he consented to be called. Assuming further that we can disregard the authorities cited in the orders which called the accused to temporary active duty, and that we can look elsewhere for authorization to make him subject to the Uniform Code of Military Justice at times different from those prescribed by 10 USC § 270, no such authority has been cited to us. Our own research has uncovered no statute or regulation to authorize the call to temporary active duty of a reservist like the accused. Previous to the Uniform Code, section 301 of the Naval Reserve Act of 1938, supra, provided that a reservist who committed an offense during a regular drill period could be "returned to a duty status without . . . consent . . . [for the] period of time . . . required for disciplinary action." That provision, however, was repealed on enactment of the Uniform Code of Military Justice. Act of May 5, 1950, 81st Congress, 2d Session, section 14 (r), 64 Stat 148. In the absence of

any such authority, neither of the orders directed to the accused established jurisdiction over him for the purpose of trial.[4]

We turn now to the ground on which jurisdiction was sustained on intermediate review, namely, that jurisdiction attached on July 18, when the accused was concededly subject to the Uniform Code. It is well-settled that jurisdiction which attaches by timely commencement of proceedings against the accused survives a change of status on his part. The principle is discussed in paragraph 11*d*, Manual for Courts-Martial, supra, and has been given effect in a number of cases in this Court. See United States v Sippel, 4 USCMA 50, 15 CMR 50; United States v Rubenstein, 7 USCMA 523, 22 CMR 313. In the language of the Manual, supra, jurisdiction attaches "by commencement of action with a view to trial—as by apprehension, arrest, confinement, or filing of charges." Applying the rule to a reservist participating in scheduled drills, the Judge Advocate General of the Air Force has ruled that "jurisdiction may not lawfully be asserted unless prior to the termination of the training period, jurisdiction has attached by commencement of action with a view to trial—as by apprehension, arrest, confinement, filing of charges *or other similar action.*" (Emphasis supplied.) OP JAGAF 1953/9, 2 Digest of Opinions, Court-Martial § 45.7, page 164. In the *Rubenstein* case, supra, at page 529, a majority of this Court held that jurisdiction attached when the accused was informed "he was being investigated for the offenses in issue . . . and he was placed under restraint by being ordered to report daily" to the investigating officer. Appellate defense counsel contend that, even under this broad ruling, jurisdiction did not attach in this case because no restraint of any kind was imposed upon the accused

[4] Our conclusion as to the absence of authority for issuance of the orders to temporary active duty makes it unnecessary to consider whether authority to call a reservist to active duty for training under 10 USC § 270 includes authority to call him to active duty for the sole purpose of subjecting him to trial by court-martial. See United States v Hooper, 9 USCMA 637, 26 CMR 417.

and no charges were served upon him at a time when he was subject to the Uniform Code. Oppositely, the Government maintains that jurisdiction did attach because the accused was, in effect, " 'held to answer' to higher authority." It relies especially upon an unpublished opinion by the board of review in United States v Hamm, CM 413302, decided March 11, 1966.

In the *Hamm* case, supra, the accused was a member of the National Guard of Oklahoma. He was ordered to six months active duty for training, effective in October 1964. The period of training was to end on April 18, 1965. On March 27, 1965, the accused perpetrated a robbery, but was almost immediately apprehended by the military police. Shortly thereafter, he was released to his company Charge of Quarters, who executed a document titled, "Receipt for Prisoner or Detained Person." That morning, or on the following day, he was placed in restriction by the commanding officer, who also initiated "flagging action" to retain him in the service beyond the scheduled release date, for the purpose of possible court-martial. On May 25, 1965, the accused was again confined and a formal charge was preferred against him on May 26. He escaped from confinement on July 6, but was returned to military control, and brought to trial on August 17, for the March robbery and for other offenses committed after the original release date. As to the robbery charge, the board of review held that jurisdiction existed to try the accused beyond the date of his scheduled release because of the prior action taken against him.

The holding in *Hamm* goes no further than the decision in *Rubenstein*. In both, the accused was ▆▆▆▆▆ ▆ placed under some form of restraint. In this case, no restraint of any sort, moral or physical, was imposed upon the accused. The record, in fact, indicates the contrary. The accused's commanding officer was instructed by the adjutant at District headquarters that the accused should not be retained beyond the termination of the drill session.

Everything that was done reflects a clear intention to exercise no military control over the accused past the end of the July 18th drill session. It was clearly contemplated that such control would be asserted some time in the future by the issuance of orders calling him to active duty, if and when the District Director determined to refer the charge to trial. The frustration of that intention, because of the absence of authority to order the accused to active duty for court-martial, does not change the fact that the accused was not, as the Government contends, "held to answer" to higher authority. On the record, there was no institution of proceedings against the accused sufficient to attach jurisdiction on July 18. We conclude, therefore, that the court-martial had no jurisdiction over the accused and the offense at the time of trial.

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside, and the charge is ordered dismissed.

Judge KILDAY concurs in the result.

FERGUSON, Judge (concurring in the result):

I concur in the result.

I agree fully with the Chief Judge that, on the facts of this case, no jurisdiction existed to try the accused, in light of the failure to take any action to attach jurisdiction and the orders which were improperly issued in the case. See United States v Rubenstein, 7 USCMA 523, 22 CMR 313, and United States v Wheeler, 10 USCMA 646, 28 CMR 212. As this serves to dispose of the case, it is unnecessary to go further and construe Uniform Code of Military Justice, Article 3, 10 USC § 803, in its application to the troublesome question of exercise of the power to try ordinary citizens by courts-martial on the basis of their tenuous connection with the armed forces through membership in the reserve forces and attendance at inactive duty training drills. Such an extraordinary exercise of military judicial authority over our modern day militiamen bears the closest exami-

nation—even from the constitutional standpoint—particularly when the civil courts are open and functioning throughout the Nation with the authority to punish all who transgress its laws, reservist or no.

I prefer, therefore, to reserve my views on broad questions affecting Code, supra, Article 2, 10 USC § 802, and Code, supra, Article 3, until it becomes needful to decide them. Accordingly, I disassociate myself from the other conclusions regarding these matters to which the principal opinion addresses itself.

I concur in the result.