5. *Brooks v. United States,* 2 M.J. 1257 (A.C.M.R. 25 February 1976).

UNITED STATES

v.

Private (E-2) Andrew M. JONES, 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, US Army, Company C, 1st Battalion, 87th Infantry, 8th Infantry Division, APO New York 09034.

CM 433906.

U. S. Army Court of Military Review.

Sentence Adjudged 19 Sept. 1975.

Decided 17 March 1976.

Appellate Counsel for the Accused: CPT Buren R. Shields, JAGC; CPT John R. Osgood, JAGC; LTC James Kucera, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Richard S. Kleager, JAGC; MAJ Steven M. Werner, JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

COOK, Judge:

In conformity with his plea, appellant was convicted by general court-martial of aggravated arson in violation of Article 126, Uniform Code of Military Justice (10 U.S.C. § 926). The approved sentence is indicated above.

On 11 May 1975, in conjunction with a Private Anderson, appellant journeyed to The Western Club for what turned into an evening of libation. The club was located at 31 Bahnofstrasse, Baumholder, Germany, on the ground floor of a two-story building. The top floor contained five rooms which were rented as apartments. In order to gain access to the Western Club it was necessary to go through a vestibule which served as the entryway for the entire building.

While at the club, appellant and his friend were persuaded to buy drinks for two young ladies in exchange for a promise by them to meet appellant and his friend after the club's closing that evening. Appellant and Private Anderson left the club and went to the predetermined meeting place, but the young women failed to complete the rendezvous.

In revenge for his unrequited attentions, appellant returned to the closed club, entered the vestibule area, piled trash in front of the Western Club door, and set the trash ablaze causing fire damage to the building.

During the *Care*[1] inquiry appellant maintained that he knew 31 Bahnofstrasse as only a bar at the time of the burning, and it was after the fire that he was made aware of the fact that the top floor was utilized as living quarters. Through counsel, appellant now challenges the providency of his plea, claiming that in order to be guilty of aggravated arson it was necessary for him to know, at the time of the commission of the offense, that the building to which he was setting fire was a dwelling or occupied structure.

Article 126, Code, *supra*, divides aggravated arson[2] into two distinct categories, (1) the willful and malicious burning of an inhabited dwelling whether occupied at the time or not, and (2) the willful or malicious burning of any structure, movable or immovable, which, to the knowledge of the offender, contains human life.[3] It was clearly the intent of the drafters to establish two classes of aggravated arson.[4] Congress intended to adopt common-law arson, and to expand the concept of aggravated arson to cover structures, other than dwellings, in which a human life could reasonably be expected to be present.[5]

In the instant case, we are dealing with the first above-mentioned category of aggravated arson. At common law an inhabited dwelling includes any structure which, even though used for another purpose, contains the living quarters of a human being.[6] This interpretation of the definition of a dwelling has been incorporated into the definition now used in the military justice system.[7] Likewise, as long as the burned structure is the dwelling of another, it makes no difference whether to the knowledge of the offender it is occupied at the time of fire.[8]

---

1. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

2. "(a) Any person subject to this chapter who willfully and maliciously burns or sets on fire an inhabited dwelling, or any other structure, movable or immovable, wherein to the knowledge of the offender there is at the time a human being, is guilty of aggravated arson and shall be punished as court-martial may direct."

3. Paragraph 205a, Manual for Courts-Martial, United States, 1969 (Revised edition).

4. Hearings before House Armed Services Committee on H.R.2498, 81st Congress, 1st Session, page 1233.

5. *Id.*

6. *United States v. Cardish*, 145 F. 242 (D.C. Wis.1906); *Spears v. State*, 92 Miss. 613, 46 So. 166 (1908).

7. "A shop or store is not an inhabited dwelling unless occupied as such . . . ." Paragraph 205, Manual, *supra*.

8. *United States v. Duke*, 16 U.S.C.M.A. 460, 37 C.M.R. 80 (1966).

When one realizes that at common law, arson was considered an offense of the greatest magnitude [9] it is easy to appreciate why it was glossed with a veneer of strict liability. It was an offense against a man's right of habitation, the gravamen of the offense being the extreme danger it presents to human life. Knowledge on the part of an offender that the structure he set ablaze was an inhabited dwelling was not a prerequisite to a valid conviction for aggravated arson. We do not believe that the authors of the Code, *supra*, intended any change in the definition or application of common-law arson. What the United States Court of Military Appeals said in *Duke, supra,* is of great import here:

> "The mental condition of the arsonist is unrelated to, and has no effect upon, whether a structure is a dwelling being used as a habitation or is some other type of building. As the law officer pointed out in his instructions, the character of the structure depends upon its use; if it is, he said, 'occupied as a place of residence or abode,' it is an 'inhabited dwelling.' " 16 U.S.C.M.A. at 464, 37 C.M.R. at 84.[10]

As long as the essence of aggravated arson is the endangerment of human life, an offender who willfully sets ablaze an "inhabited" dwelling, possibly placing another human in peril,[11] will be held responsible for his actions.

The findings of guilty and the sentence are affirmed.

Senior Judge BAILEY and Judge De-FORD concur.

**9.** "It [arson] is also frequently more destructive than murder itself, of which, too, it is often the cause; since murder, atrocious as it is, seldom extends beyond the felonious act designed, whereas fire too frequently involves in the common calamity persons unknown to the incendiary, and not diary, and not intended to be hurt by him, and friends as well as enemies." IV Blackstone, Commentaries on the Laws of England, 220.

**10.** Appellant's assertion that this statement in *Duke* was overruled by *United States v.*

*Greene,* 20 U.S.C.M.A. 297, 43 C.M.R. 137 (1971) is misplaced. In *Greene,* the court held that in a case involving simple arson the military judge committed error by failing to instruct on the effect of voluntary intoxication on the specific intent element of willful and malicious.

**11.** We note that a stipulation of fact reveals that a man was asleep in one of the upstairs apartments.