UNITED STATES

v.

Jimmy D. SCOTT, 290 58 8347, Lance Corporal (E–3), U. S. Marine Corps.

NCM 79 0381.

U. S. Navy Court of Military Review.

Sentence Adjudged 4 Nov. 1978.

Decided 28 Feb. 1980.

CAPT E. A. Burnette, USMC, Appellate Defense Counsel.

LT Joseph G. Van Winkle, JAGC, USNR, Appellate Government Counsel.

Before BAUM, Senior Judge, and PRICE and MICHEL, JJ.

MICHEL, Judge:

The only viable issue in this case is whether the crime of aggravated arson, as defined[1] and explained[2] in military jurisprudence, was committed.[3] We believe that it was and therefore affirm appellant's conviction for that offense.

To be guilty of the crime of arson, a person subject to the Uniform Code of Military Justice must be proven to have "willfully and maliciously burn[ed] or sets on fire an inhabited dwelling, or any other structure, movable or immovable, wherein to the knowledge of the offender there [was] at the time a human being . . .."[4] The expansive treatment given to this offense by the current *Manual for*

*Courts-Martial, 1969 (Rev.)* (MCM) is precisely that of its venerable ancestor, save inconsequential adjective adjustment and typographical transposition.[5] Thus, the scope of those acts currently specifically proscribed has remained in effect for almost thirty years. During the interim, our judicial superiors have decided only one case in which the subject offense was submitted to analytical scrutiny.

In *United States v. Duke*,[6] the situs of the offense was an airmen's dormitory used to house a number of base personnel. After an exhaustive exploration of the historical precedents and legislative consideration which helped to spawn the military offense of aggravated arson and thus correctly situate the offense in its then current context, Chief Judge Quinn, writing for an essentially undivided Court,[7] concluded that the words "inhabited dwelling" in Article 126 meant that the structure at issue must be used for habitation, and not that a human being must be present therein at the time the dwelling is set on fire; in other words, if the structure is proven to be a dwelling, human presence at the time of the offense is not an element of that offense.[8] As the character of a structure depends upon its use, such structure may be classed as an "inhabited dwelling" if it is shown to have been, at the time and place alleged, occupied as a place of residence or abode.[9] This is the focal point of appellant's challenge here to the lawfulness of his conviction for,

---

1. See Art. 126(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 926(a).

2. See par. 205a, *Manual for Courts-Martial, 1969 (Rev.)* (MCM).

3. Appellant, contrary to his pleas, was convicted of the alleged offense and sentenced to reduction to pay grade E–1, confinement at hard labor for 5 years, total forfeiture of pay and allowances, and a dishonorable discharge.

4. Art. 126(a), UCMJ, 10 U.S.C. § 926(a). This language was taken *verbatim* from the original version of the Code. See Act of 5 May 1950, Pub.L. No. 506, ch. 169, § 1, 64 Stat. 108 (1950); Title 50 U.S.C. (Ch. 22) § 551–736 (which remained unaltered by later revision). See also Act of 10 August 1956, Pub.L. No. 1028, ch.

1041, § 1, 70A Stat. 1 (1956). See generally Titles 10 and 32, U.S.C.

5. See par. 205a, *Manual for Courts-Martial, 1951* (MCM, 1951).

6. 16 USCMA 460, 37 CMR 80 (1966). The precise allegation in *Duke* was attempted aggravated arson. See Art. 80, UCMJ, 10 U.S.C. § 880; par. 159, MCM (1951).

7. Judge Kilday concurred; Judge Ferguson concurred in the result without opinion.

8. *United States v. Duke, supra* at 464, 37 CMR at 84.

9. *Id.*

at the time of the fire, the structure set ablaze was devoid of any human occupant.

In the early morning hours of 5 September 1978, Building 927, Women Recruit Training Command, Parris Island, South Carolina, was the scene of a fire, the cause of which was determined to be solely that of human agency. Building 927, designated on the base plat as S–4, Storage and Issue, was shown to be situated 25 feet from a three-wing, three-tier barracks, Building 929, housing upwards of one hundred enlisted Marines;[10] Building 927 irrefutably served as a gear issue point for most of the inhabitants of Building 929 and concomitantly provided storage, office, and related functional space to those whose military duties were performed therein. Also undisputed is that fact that at no time, on or prior to 5 September 1978, did Building 927 provide a place of residence, abode, or habitation for a human being. Should our inquiry cease here, appellant would, as a matter of law, be guilty at most of simple arson[11] and the affirmed findings in this case perforce would have to be downgraded accordingly. For reasons yet to be developed, that action is not required.

When Congress enacted Article 126(a), it specifically intended to *expand* the common law concept of aggravated arson.[12] Thus, the current legislation carries with it all of those attributes with which that offense was imbued at common law, as well as all subsequent legislative embellishments. At the core of the offense at common law was the recognition that the true evil sought to be avoided was the extreme danger to human life presented by this species of conflagration; ergo, this was precisely the gravamen of the ancient offense[13] and, as respects putative military miscreants, it remains so until the present.[14] Trailing in the wake of this fundamental premise is a collateral consideration which bears directly on appellant's assertion of error.

At common law, not only was the "dwelling" or manor house within the protective ambit of the criminal law, but that protection extended as well to outlying buildings found to be within the "curtilage." Definitionally, that term embraces the inclosed space of ground and buildings immediately surrounding a dwelling house. Black's Law Dictionary 346 (5th ed. 1979). It includes such space as is necessary and convenient, and is habitually used, for a variety of purposes in connection with the dwelling. *See* 5 Am.Jur.2d *Arson and Related Offenses* § 1 (1962). Similarly, a building, auxiliary to a dwelling, which is adjacent to the dwelling and subservient to it, although distinct from the principal structure and not contiguous to it, may be found to be within the curtilage. *See id.* at § 20. Such a conclusion, which itself is premised on the scope of the curtilage, depends upon the facts of each case. *See Rosencranz v. United States*, 356 F.2d 310, 313 (1st Cir. 1966).

In the case at bar the evidence definitely established that Buildings 927 and 929 were connected by an open, covered walkway, electrical power lines, and water pipes. There was also clear and convincing evidence that Building 927 functioned to provide various support services to the inhabitants of Building 929. The architectural arrangement of the complex, of which the two buildings were an integral part, evidence an intention on the part of its planners to create a self-sustaining sub-activity within the greater expanse of the Marine Corps Recruit Depot, Parris Island, South Carolina. From these factors we

---

10. *See* Appendix, *infra.*

11. *See* Article 126(b), UCMJ, 10 U.S.C. § 926(b); par. 205 *b*, MCM, 1969 (Rev.).

12. *See United States v. Duke, supra* at 464, 37 CMR at 84. *See also United States v. Jones*, 2 M.J. 785, 786 (A.C.M.R.1976).

13. *See United States v. Jones, supra* at 787.

14. *See* par. 205*a*. MCM, 1969 (Rev.).

conclude that, at the time and place alleged, Building 927, the situs of the fire, was within the curtilage of the "dwelling," Building 929. Any contrary holding would do violence to what we perceive as the interface between the object sought to be achieved by the drafters of the statute and our own recognition of the character of modern habitation planning and construction respecting multi-occupant structures. Accordingly, we find this assignment of error to be without merit.

◼ Appellant's second assignment of error incorporates his earlier petition for a new trial. This Court finds no merit in appellant's assertion that he should be granted a new trial. Faced with conflicting affidavits, we are not convinced that the witness, Datil, gave perjured testimony. Even assuming, *arguendo*, that Datil gave perjured testimony as alleged, we cannot say that the exclusion of such testimony would have had a substantial contributing effect upon the findings and without which there probably would have been a finding of not guilty or a failure of proof of the offense alleged. *See* paragraph 109*d*(3)(a), MCM, 1969 (*Rev.*).

◼ Appellant also alleges that the record of trial is not *verbatim*. He bases this allegation on another affidavit. We find no substance in the affidavit of the interloper[15] Gilson which gives her standing to assert before this tribunal that the record of trial, duly authenticated by the trial judge, *see* paragraphs 39*f* and 82*f*, MCM, 1969 (*Rev.*), and which authentication remains unchallenged here, was not in fact *verbatim* thus constituting an infirm foundation upon which to affirm appellant's adjudged punitive discharge.

Accordingly, the findings and sentence as approved below are affirmed.

Senior Judge BAUM and Judge PRICE concur.

---

15. Neither appellate defense counsel nor the affiant has labored to provide this Court with any indicia of affiant's complete identity or her specific connection with this case. Further, we are uninformed as to any facts and circumstances showing either the impetus for the affiant's disclosure or her standing to examine the completed record of trial. Therefore, we reject her assertions out of hand.

## APPENDIX

WOMEN'S RECRUIT TRAINING COMPLEX
MARINE CORPS RECRUIT DEPOT
PARRIS ISLAND, SOUTH CAROLINA