## UNITED STATES

v.

**John A. HARRIS, 458 60 0714, Major (0-4), U. S. Marine Corps Reserve.**

**NMCM 791978.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 23 April 1979.

Decided 19 May 1981.

---

1. *Id.* at 867.

LCDR I. D. Warden, Jr., JAGC, USN, Appellate Defense Counsel.

CAPT Craig L. Kemmerer, USMCR, Appellate Government Counsel.

Before GREGORY, Senior Judge, and DONOVAN and GLADIS, JJ.

GREGORY, Senior Judge:

Pursuant to his guilty pleas, appellant was convicted at a general court-martial bench trial of four specifications in violation of Articles 132, 133, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 932, 933, and 934, arising out of the presentation of a false and fraudulent claim for lodging expenses and subsequently attempting to influence and obstruct an Article 32, UCMJ, pretrial investigation into his conduct involving another claim for lodging expenses. He was sentenced to forfeit $400.00 per month for eight months and to lose 1,000 numbers in the lineal list of Commissioned and Warrant Officers of the Marine Corps Reserve. In accordance with a pretrial agreement, the convening authority approved and ordered executed only so much of the sentence as provides for forfeiture of $400.00 per month for two months and loss of 1,000 numbers. The Judge Advocate General has forwarded this case for review by this Court pursuant to Article 69, UCMJ, 10 U.S.C. § 869.

On appeal, appellant renews his trial contention that there was a lack of personal jurisdiction over him as to the alleged violation of Article 133, UCMJ, which occurred on 22 September 1977 (Charge IV, specification 4). He bases this contention on the fact that between that date and the commencement of disciplinary proceedings against him he had been off and on active duty several times.

Major Harris is a reserve officer, and the offense in question occurred while he was on active duty training during the summer/fall of 1977. On 24 September 1977, he was released from active duty, and he returned to his home of record, resuming his membership in a local mobilization

training unit. On 31 October 1977, he terminated his membership in that local unit because of a change of address, but became administratively attached to Marine Corps Reserve Forces Administrative Center, Kansas City, Missouri, and continued to earn reserve retirement credit. In January 1978, he accepted orders to active duty and served on active duty for several weeks, at which time he was released and resumed his inactive duty status. Major Harris again served a brief period on active duty from 21 May to 23 June of 1978. No action was taken to assert jurisdiction over him during these periods, although investigation into his activities had been initiated in November 1977. On 6 July 1978, Major Harris entered into a standard written agreement with the U.S. Marine Corps and came on active duty for a period of three years. Following this entry on active duty, the charges were preferred, investigated at an Article 32 investigation, and referred to trial.[1]

■ The general rule as to jurisdiction over misconduct which occurred during a prior period of active duty is set forth in paragraph 11a, *Manual for Courts-Martial, 1969 (Rev.)*:

> The general rule is that court-martial jurisdiction over commissioned officers, cadets, midshipmen, warrant officers, enlisted members and other persons subject to the code *ceases on discharge from the service or other termination of that status* and that jurisdiction as to an offense committed during a period of service or status thus terminated is *not revived by re-entry into the military service or return into such a status.*

(Emphasis supplied). The Court of Military Appeals has made it clear, however, that a distinction exists between the statutory position of a reservist who is released from active duty and that of a person discharged or otherwise separated so as to formally and completely sever all service ties. In *United States v. Schuering*, 16 U.S.C.M.A.

324, 36 C.M.R. 480 (1966), the Court established the rule that court-martial jurisdiction over offenses may be continued from one period of reserve training duty to another provided that the accused was subject to military jurisdiction both at the time of commission of the offense and at the time of trial. The Court emphasized that nothing in Article 3(a), UCMJ, 10 U.S.C. § 803(a), pertaining to revival of jurisdiction over offenses committed in a previous period of service, was intended to preclude trial of a reservist at a later period of reserve training duty for an offense committed during an earlier period of training duty. In *Schuering*, however, the Court found a lack of court-martial jurisdiction because of a defect in the method used to recall the accused to active duty for purposes of trial. Because of the defect, Schuering was not subject to military law at the time of trial and jurisdiction did not exist at that time. *Id.* at 330, 36 C.M.R. at 486.

Appellant in this case has directed our attention to *United States v. Mathwich*, 42 C.M.R. 937 (N.C.M.R.1970), a prior decision of this Court involving a similar factual situation as *United States v. Schuering, supra*, and interpreting the decision in that case. In *Mathwich*, this Court found that the Court of Military Appeals in *Schuering* established a "general rule that jurisdiction may be continued from one period of inactive training duty to another if jurisdiction is in fact established during the original period." *Id.* at 939. Applying this general rule, this Court in *Mathwich* found insufficient measures had been taken to exercise jurisdiction during the period of training duty when the alleged offenses occurred, and as a result jurisdiction was lost to try the accused during a subsequent period of training duty. As appellant in the case *sub judice* notes, no measures were taken here to exercise jurisdiction over the offense in question before appellant left active duty on 24 September 1977.

---

1. The other three offenses of which appellant stands convicted occurred following his entry onto his present tour of active duty, and jurisdiction over these offenses has not been attacked.

We believe this Court in *Mathwich*[2] misread the true holding of *United States v. Schuering, supra.* It is correct that, upon finding the defect in the recall to active duty resulting in the lack of jurisdiction at the time of trial, the Court of Military Appeals in *Schuering* did examine the record to determine whether there had been an "institution of proceedings" against the accused during the period of active duty when the alleged offense was committed which would suffice to confer jurisdiction to try the accused during a subsequent period of active duty. This had been the ground upon which jurisdiction had been sustained by intermediate reviewing authorities. The Court of Military Appeals did not agree with the authorities below and did not find such a basis for jurisdiction. *Id.* at 331, 36 C.M.R. at 487. Nevertheless, this ultimate finding by the Court does not detract from the earlier holding that jurisdiction may be continued from one period of reserve training duty to another if the accused was subject to military law at the time of the offense and also at the time of trial.

█ The record of trial establishes that Major Harris was on active duty under proper orders, voluntarily accepted, both at the time of the offense in question and at the time of trial. This particular offense occurred two days before he left active duty and involved a deceptive scheme to present a false and fraudulent claim. The Government did not become aware of the offense until an audit of the claim was conducted by the Marine Corps Finance Center, Kansas City, Missouri.[3] As a result of irregularities found during that audit, the Finance Center requested a Naval Investigative Service investigation which commenced on 29 November 1977. A preliminary report of the results of the investigation was sent to the officer convening the Article 32 investigation in July 1978, after Major Har-

ris had entered on his current period of active duty. The final report was completed on 19 October 1978. (Appellate Court Exhibit II; R. 37–43, 159–161). The Government appears to have acted reasonably and initiated action against Major Harris as to the offense in question at the earliest possible time.

Unlike the situation in *Schuering*, there appears no question that Major Harris was on active duty at his own request both at the time of the alleged offense and at the time of trial. On this basis, we find that he was subject to military law at both times and that jurisdiction existed to try him during his current period of active duty. We concur completely in the military judge's finding that Major Harris "was never at any time discharged or separated from the service . . . and he has had a continuous status as a reserve officer." (R. 156). Because of this continuous status as a reserve officer, the requirements of paragraph 11a of the *Manual* have been satisfied. The military judge correctly denied the motion to dismiss specification 4 under Charge IV for lack of personal jurisdiction.

Accordingly, the findings of guilty and the sentence as approved on review below are affirmed.

Judge DONOVAN and Judge GLADIS concur.

---

2. *Schuering* and *Mathwich* both dealt with reservists performing drill periods of inactive duty training; however, we find no reasonable basis for differentiating that situation from the extended periods of active duty for training performed by Major Harris in determining court-martial jurisdiction.

3. Such delayed discovery is likely to recur as military organizations rely increasingly on computers, which often present convoluted audit trails.