UNITED STATES, Appellee

v

MICHAEL E. DOTSON, Private,
U. S. Army, Appellant

17 USCMA 352, 38 CMR 150

No. 20,457

January 19, 1968

*Captain Kenneth J. Stuart* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Lieutenant Colonel Martin S. Drucker,* and *Major David J. Passamaneck.*

*Captain Salvatore A. Romano* argued the cause for Appellee, United States. With him on the brief was *Major John F. Webb, Jr.*

## Opinion of the Court

KILDAY, Judge:

The appellant was arraigned before a general court-martial convened at Wurzburg, Germany, charged with perjury, in violation of Article 131, Uniform Code of Military Justice, 10 USC § 931. He pleaded not guilty but was found guilty as charged and sentenced to a bad-conduct discharge, total forfeitures, and confinement at hard labor for one year. The convening authority reduced the confinement at hard labor to nine months but otherwise affirmed the findings and sentence. Before the board of review, appellate defense counsel alleged that the evidence was insufficient in fact and in law to sustain the finding of guilt beyond a reasonable doubt on the ground that there was a fatal variance between the pleading and proof. The Government conceded there was a variance but argued that it was immaterial and thus not prejudicial. The board of review affirmed the findings and sentence.

We granted review to consider whether the conceded variance between the pleading and proof was fatal, necessitating a dismissal of the charge.

The appellant was tried in common with Privates Cobb and Washington, all being charged with having committed perjury in the same trial.[1] The specification alleging the offense against the appellant reads as follows:

"In that Private (E–1) Michael E Dotson, US Army, Company C, 2d Battalion, 30th US Infantry, 3d Infantry Division, APO 09036, having taken a lawful oath in a trial by general court martial of Specialist Four Ben T Richmond and Private Penn J Ford that he would testify truly, did, at Wurzburg, Germany, on or about 12 July 1966, willfully, corruptly, and contrary to such oath testify in substance that he did not have an entrenching tool in his hands on 2 January 1966, when Spe-

cialist Four Ben T Richmond and Private Penn J Ford were in his room, which testimony was upon a material matter and which he did not then believe to be true."

By way of establishing the basis for the charge, trial counsel, with the consent of the appellant, introduced into the record and read to the court the following stipulation of fact:

"That Specialist Four (E4) Ben T. Richmond and Private (E2) Penn J. Ford, both of Company C, 2d Battalion, 30th Infantry, APO 09036, United States Army, were tried on 12, 13 July 1966 at Wurzburg, Germany, by a duly appointed General Court-Martial convened by Major General Robert H. Schellman, Commanding General, 3d Infantry Division, 3d Infantry Division Appointing Order Number 3 dated 8 July 1966 as amended by Court-Martial Appointing Order Number 4, Headquarters, 3d Infantry Division, 12 July 1966.

"That the accused, Private Michael E. Dotson, Company C, 2d Battalion, 30th Infantry, Schweinfurt, Germany, United States Army, did take an oath at the above described judicial proceeding.

"That this oath was administered to the above described accused, Private Michael E. Dotson, in a matter in which an oath was required by law.

"That the above described oath was administered by Captain Michael A. Brown, 099296, JAGC, 3d Administration Company, 3d Infantry Division, Trial Counsel, certified in accordance with Article 27b, UCMJ, a person having authority to do so.

"That upon such oath the accused, Private Michael E. Dotson, on or about 12 July 1966, at Wurzburg, Germany, voluntarily testified that he, Private Lucius E. Washington

---

[1] Cobb and Washington were acquitted of the charge of perjury.

**353**

and Private Calvin J. Cobb were in a room with Private First Class John Murray when Specialist Four Ben T. Richmond and Private Penn J. Ford broke up a fight between Dotson, the accused, and Pfc John Murray, and that the accused, Private Michael E. Dotson, did not have or use an entrenching tool in the above described altercation."

Additional proof offered by the Government was in the form of the deposition of Private First Class Murray, which trial counsel, in part, read to the court. Therein counsel inquired:

"Q [TC]. I direct your attention to the night of 2 January 1966, specifically an affray or fight—alleged fight, between Pfc John Murray, yourself, and Pfc Michael Dotson. Would you please relate exactly what, if anything, happened?

"A. Well, I was in my bunk when Dotson came in and I was hit by an entrenching tool twice and I turned around and I seen him with an entrenching tool still raised and I believe he was ready to come down again. Then Boyd [?] and Richmond grabbed him and pushed him away."

Sergeant S testified that on the night of January 2, 1966, while making a routine bedcheck of the barracks, he observed Dotson emerge from room number five and enter room number two, at which time Dotson was carrying an entrenching tool. Thereafter, the sergeant entered room number two and saw Dotson with an entrenching tool in his hand. It appeared to him that Ford and Richmond were trying to take it away. Murray was seated on his bed crying, and had a lump on his head. The sergeant was aware that Dotson did not bunk in either rooms number two or number five, but in room number fourteen. Every room is required to have an entrenching tool on top of the lockers, according to the Sergeant.

The Government contended before this Court that "the stipulation of fact, *supra,* and the proof in this case, show that: (1) the appellant had an en-

trenching tool in his hands on the date alleged; (2) he lied when he testified that he did not have or use an entrenching tool in the described altercation; and (3) the foregoing took place in the billets where all of the parties lived." In essence, counsel alleged that the gravamen of the offense was the appellant's perjured testimony that he did not have an entrenching tool on the date of the altercation, and that it was immaterial to the charged offense that a particular room of the billets was the site of the altercation. At most, it is argued, the designation in the specification of the situs as "in his room" was nothing more than mere surplusage.

For some unexplained reason the Government, in drafting the specification of perjury against the appellant, did not include any reference to the altercation between the appellant and Private First Class Murray or that all of the parties concerned were in Murray's room at the time, as it did in charging Privates Cobb and Washington. Yet it now contends that the use by Dotson in that altercation of an entrenching tool is the material matter, a necessary element of perjury, to which the appellant testified to the contrary and that the location of the event is mere surplusage.

It is fundamental, whether the matter charged is perjury or some other criminal offense, that the allegation of criminality and proof must correspond; that regardless of what is disclosed by the evidence, proof, in order to be effectual, must correspond substantially with the allegations of the pleadings. If they are not thus proved, a variance or failure of proof, dependent upon the scope and meaning of the allegation, results. (See generally 41 Am Jur, Pleading, Variance, § 370, *et seq.,* page 546; 71 CJS, Pleading, Variance Between Allegations and Proof, § 531, *et seq.,* page 1098.) This is especially true in prosecutions for perjury where a high standard of proof is required. United States v Purgess, 13 USCMA 565, 33 CMR 97; and United States v Guerra, 13 USCMA 463, 32 CMR 463; and

cases cited therein. See also *People v Ames*, 61 Cal App 2d 522, 143 P2d 92 (1943). As noted in 70 CJS, Perjury, § 50, Issues, Proof, and Variance, page 520:

"In all matters which constitute the essence of the crime, strictness of proof is required; the averments of the indictment or information as to material matters and the proof must correspond, and a substantial variance in this respect is fatal. However, strict proof is not required as to immaterial averments, or it has been stated, as to those which are not descriptive of the offense; and a variance in respect of such matters is not fatal." [Citations omitted.]

In the case at bar, the Government argues that it successfully met this strict standard and proved its case against the appellant. We might agree had the appellant been charged with what was proved. The plain fact of the matter is, however, that the case proved simply is not in accordance with the specification. Nowhere in this record is there reflected any evidence that the appellant, when testifying at the trial of Richmond and Ford, asserted, either in *haec verba* or in substance, that *"he did not have an entrenching tool in his hands on 2 January 1966, when Specialist Four Ben T Richmond and Private Penn J Ford were in his room."* (Emphasis supplied.)

Simply stated, the essence of the perjured testimony is that the appellant did not use an entrenching tool during the fight with Murray. That is the substance of what he said. He was charged, however, with lying when he denied having an entrenching tool in his hand on the date in question when Richmond and Ford were in his room —a vast difference between what was charged and the proof offered by the Government.

We hold, therefore, that the conceded variance, whether it be labeled a substantial variance or a failure of proof, was fatal to the Government's case and reversal is required. (70 CJS, supra.)

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Army. The charge is ordered dismissed.

Chief Judge QUINN and Judge FERGUSON concur.