John R. MESSINA, Petitioner,

v.

COMMANDING OFFICER, UNITED STATES NAVAL STATION, SAN DIEGO, CALIFORNIA, et al., Respondents.

Civ. No. 72–143–T.

United States District Court,
S. D. California.

May 16, 1972.

David Unrot and George Haverstick, San Diego, Cal., for petitioner.

Harry D. Steward, U. S. Atty., by Frederick B. Holoboff, Asst. U. S. Atty., San Diego, Cal., CMDR. A. J. Johns, J.A.G.C., U.S.N., Asst. Dist. Judge Advocate, Eleventh Naval District, San Diego, Cal., for respondents.

## MEMORANDUM OF DECISION

TURRENTINE, District Judge.

This cause came on for hearing on May 1, 1972, at 10:00 A.M., upon the motion of petitioner to extend beyond 10:00 A.M. on said date the temporary restraining order previously issued by the Honorable Gordon Thompson enjoining respondents from transferring petitioner, a Hospital Corpsman, Third Class, from the United States Naval Correctional Custody Facility, San Diego, California, to the United States Naval Disciplinary Command, Portsmouth, New Hampshire, until such time as petitioner's application for a writ of habeas corpus could be considered on its merits at an evidentiary hearing. Petitioner appeared by and through his counsel, David Unrot and George Haverstick, and respondents appeared by and through their counsel. Harry D. Steward, United States Attorney, by Frederick B. Holoboff, Assistant United States Attorney, and Commander A. J. Johns, J.A.G.C., U.S.N. At the hearing of petitioner's motion the court also entertained the motion of respondents to dismiss the petition on the basis that the court lacked jurisdiction over the subject matter.

The court having considered the pleadings, papers and documents and having heard oral argument and being fully advised in the premises, hereby denies petitioner's motion for extension of the temporary restraining order and dismisses his petition for the reasons set forth hereinafter:

In August of 1971, a married couple were arrested in their assigned quarters aboard the Naval Weapons Center, China Lake, California, for wrongful posses-

sion of marijuana. Upon being interrogated, these individuals stated that they had received the contraband from the petitioner on various occasions. Another individual was also implicated and he, likewise, stated that he had received illegal substances from petitioner in times past. On the basis of these statements, petitioner was charged on November 10, 1971, with a violation of Article 92, Uniform Code of Military Justice (10 U.S.C. § 892), said charge setting forth sixty-one specifications alleging unlawful sale, transfer, use, and possession of narcotics and dangerous drugs. On January 10, 1972, the charge and forty-three specifications thereunder, were referred to a general courts-martial by the convening authority, Commandant, Eleventh Naval District. Subsequently, on March 7, 1972, petitioner entered pleas of guilty to the charge and six of the specifications, the remaining specifications resulting in a finding of not guilty when the government failed to offer proof. Petitioner was then sentenced to a dishonorable discharge and confinement at hard labor for three years, total forfeitures of all pay and allowances, and reduction to pay grade E–1. However, this sentence was later modified by the convening authority, in accordance with the plea bargaining, to a bad conduct discharge and eighteen months confinement at hard labor, with forfeitures and reduction remaining unchanged.

On April 25, 1972, petitioner was scheduled to be transferred from the custodial facility in San Diego, California, to the naval penitentiary at Portsmouth, New Hampshire, as is required by United States Naval Bureau of Personnel Instruction 1640.5H. However, petitioner sought and obtained a temporary restraining order enjoining such movement. Simultaneous to this application for the temporary restraining order, petitioner filed a petition for writ of habeas corpus, arguing that his confinement was illegal since the United States Navy no longer had jurisdiction over his person when he was convicted and sentenced.

In an effort to support his contention, petitioner alleges that his term of enlistment expired on February 5, 1972. Apparently, cognizant of the authority of the military to extend a member's term of service where action has been commenced with a view to trial for offenses committed while on active duty, petitioner further alleges that the statements made against him were wholly uncorroborated and that his own confession and plea of guilty were the product of a will overborne by multiplicious charges, confinement and interrogation. Petitioner then contends that in such a situation jurisdiction does not extend beyond the member's normal expiration of his term of service. Also, petitioner complains of a denial of speedy trial, and, apparently, of a denial of counsel of his own choosing. Then, petitioner alludes to a lack of the military court's jurisdiction over the offense, by intimating that these occurred only in the civilian community.

However, this court is of the opinion that the military court did have jurisdiction over both petitioner's person and the offense. Accordingly, petitioner's application is premature, and, therefore, should be dismissed.

■ With respect to this court's threshold inquiry as to the jurisdiction of the military court over the person of the petitioner, it is noted that the mere expiration of a person's term of service does not automatically terminate his military status. Dickenson v. Davis, 245 F.2d 317, 319 (10th Cir.1957) cert. denied, 355 U.S. 918, 78 S.Ct. 349, 2 L.Ed. 2d 278 (1958); Roman v. Critz, 291 F. Supp. 99 (W.D.Tex.1968).

■■ Indeed, the right of a serviceman to demand immediate release from active duty in such a case is contingent upon several factors, one of which is that no criminal proceedings be pending at the date his term of service is otherwise due to expire. In the event that charges are pending and some action with a view to trial has been taken, then the military has statutory authority to continue automatically the member on active duty until final resolution of such charges.

Thus, Article 2 of the Uniform Code of Military Justice (10 U.S.C. § 802) provides in pertinent part:

> The following persons are subject to this chapter: (1) Members of a regular component of the armed forces including those awaiting discharge after expiration of their terms of enlistment. . . .

And, pursuant to the authority invested in him by 10 U.S.C. § 836, the President of the United States has prescribed a Manual for Courts-Martial by his executive Order 10214, dated February 8, 1951, which, also in pertinent part, provides:

> d. Effect of termination of term of service. Jurisdiction having attached by commencement of action with a view to trial—as by apprehension, arrest, confinement, or filing of charges—continues for all purposes of trial, sentence and punishment. If action is initiated with a view to trial because of an offense committed by an individual before his official discharge—even though the term of enlistment may have expired—he may be retained in the service for trial to be held after his period of service would otherwise have expired. See Article 2(1). MANUAL FOR COURTS-MARTIAL, 1970 (Revised Edition) para. 11d.

■ Accordingly, where the offense charged allegedly took place while a service member was on active duty, the military's jurisdiction over that individual automatically continues for purposes of trial and punishment. The only proviso is that some action with a view to trial must be commenced prior to the date of termination of the enlistment contract. In the instant case, this requirement was clearly satisfied when, on November 10, 1971, charges were preferred against petitioner. It was not until February 5, 1972, that his enlistment was originally due to expire.

■ Petitioner seems to argue that the automatic extension of enlistment does not apply in instances where the evidence against a service member violates some rule of evidence and would not be admissible at the trial of the case. However, such a remarkable proposition cannot, even remotely, be implied in paragraph 11d of the Manual for Courts-Martial. Were this court to hold otherwise, every serviceman accused of an offense whose original term of service expired while he was awaiting trial or even while in post trial confinement could collaterally attack his conviction immediately in federal court, and obtain that court's review of any and all contentions of error. Thus, a petitioner could complain that the evidence at trial was insufficient upon which to base a conviction, or even of prosecutorial misconduct, and, accepting this petitioner's argument, thereby obtain immediate federal court scrutiny of the military trial merely by also alleging that he is now being held beyond the date that his original term of enlistment was to expire. Such a result would hardly be in keeping with the mandate of the Supreme Court in the case of Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950), wherein the federal civilian courts were admonished to avoid needless friction between themselves and the military courts by requiring, as a matter of comity, a habeas corpus petitioner to first exhaust his military remedies before seeking redress in the federal civilian courts. This principle has been consistently reaffirmed by the Supreme Court. Noyd v. Bond, 395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969); Parisi v. Davidson, 405 U.S. 34, 92 S.Ct. 815, 822, 31 L.Ed.2d 17 (1972). Indeed, in a very recent case, the Court was careful to point out that "(o)ur decision today should not be understood as impinging upon the basic principles of comity that must prevail between civilian courts and the military judicial system." Parisi v. Davidson, 405 U.S. 34, 46, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972).[1]

---

1. In Parisi v. Davidson, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972), the petitioner was a member of the armed forces who had unsuccessfully applied for discharge as a conscientious objector. After he had exhausted all of his administrative remedies, he filed a habeas corpus petition in federal district court, claiming that the Army's denial of his application was without basis in fact. Thereafter, the Army brought charges against him and petitioner was referred to a court-martial on the basis of his failure to obey a military order to board a plane to Vietnam. The federal district court ordered consideration of his habeas corpus petition deferred until final determination of the court-martial proceedings. The Court of Appeals affirmed, but the Supreme Court reversed, holding that, notwithstanding the principle of comity, there was no reason to stay consideration on the petition since its basis was separate and distinct from the basis of the criminal proceedings pending before the military court:

But the issue in this case does not concern a federal district court's direct intervention in a case arising in the military court system. Cf. Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146; Noyd v. Bond, 395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 631.

The petitioner's application for an administrative discharge—upon which the habeas corpus petition was based— antedated and was independent of the military criminal proceedings.

The question here, therefore, is whether a federal court should postpone adjudication of an independent civil lawsuit clearly within its original jurisdiction under accepted principles of comity, the court should stay its hand only if the relief the petitioner seeks—discharge as a conscientious objector—would also be available to him with reasonable promptness and certainty through the machinery of the military judicial system in its processing of the court-martial charge. Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 229, 84 S.Ct. 1226, 1232, 12 L.Ed. 2d 256; Davis v. Mann, 377 U.S. 678, 690–691, 84 S.Ct. 1441, 1447–1448, 12 L.Ed.2d 609; Lucas v. Forty-Fourth General Assembly of Colorado, 377 U.S. 713, 716–717, 84 S.Ct. 1459, 1463–1464, 12 L.Ed.2d 632 (sic). For the reasons that follow, we are not persuaded that such relief would be even potentially available, much less that it would be either prompt or certain. *Id.* at 41, 92 S.Ct. at 819.

■ This court does not believe that the exhaustion requirement, as prescribed by the Supreme Court, was meant to be circumvented with such facility and with arguments as cantilevered as that proffered in the case at bar. This requirement is not a mere formality which can be disregarded in every instance where the jurisdiction of the military courts is nominally challenged, as has been done in the instant case. Stripped of its embellishments, petitioner's complaint is merely that his confession was involuntary and his pleas of guilty were coerced. These are matters for the military courts of review to consider, as are his contentions that he was denied both a speedy trial and counsel of his choice.

■ With respect to petitioner's implied contention that the military court lacked jurisdiction over the offense, under the rationale of O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L. Ed.2d 291 (1969), suffice it to say that the evidence before this court clearly establishes that the only offenses which the military court did not dismiss and to which petitioner entered pleas of guilty were those which involved the sale of marijuana and hashish to another serviceman. (See Appendix A, attached herewith.) Also, petitioner expressly admitted to the military judge that all of these offenses had been committed aboard the Naval Weapons Center, China Lake, California. (See Appendix B, attached herewith.) Certainly, this unlawful conduct was sufficiently "service-connected" to sanction the exercise of jurisdiction by the military court over the charge and the specifications to which the pleas of guilty were made. United States v. Beeker, 18 USCMA 563, 40 CMR 274 (1960).

From the facts before this court, it appears that the military court had jurisdiction on March 7, 1972, over both the person of the petitioner and the offenses prosecuted. Accordingly, petitioner must first exhaust his available intra-military remedies before seeking redress in federal court.[2]

This court concludes that the application for the extension of the temporary restraining order should be denied and the petition for the issuance of a writ of habeas corpus dismissed.

## APPENDIX A

I certify that the attached is a true copy of the Charge Sheet in the case of United States v. John R. Messina, Hospital Corpsman Third Class, United States Navy, tried by General Court-Martial on 7 March 1972, reflecting those specifications of which the accused, John R. Messina, was convicted.

(s) A. J. JOHNS
ARTHUR J. JOHNS
10 USC 936
Commander, JAGC, U. S. Navy
Assistant District Judge Advocate
Eleventh Naval District
San Diego, California 92132

DATED this 4th day of May, 1972.

---

2. Once initial review is completed by the convening authority, a convicted serviceman has an absolute right to have his case reviewed by a Court of Review if the sentence, as approved by an officer exercising general court-martial jurisdiction, includes a bad conduct discharge, whether suspended or not suspended. 10 U.S.C. § 866. In addition, a serviceman, in certain instance, may have his case reviewed by the Court of Military Appeals. 10 U.S.C. § 867. Finally, at any time within two years after approval by the convening authority of any court-martial sentence, a serviceman may petition the Judge Advocate General for a new trial on the basis of newly discovered evidence or fraud on the court. 10 U.S.C. § 873.

## CHARGE SHEET

| PLACE | DATE |
|---|---|
| AIR TEST AND EVALUATION SQUADRON FIVE, NAF, CHINA LAKE, CALIF. | 8 November 71 |

| ACCUSED (Last name, First name, Middle initial) (List aliases when material) | SERVICE NUMBER | GRADE OR RANK Hospital Corpsman AND PAY GRADE Third E-4 Class |
|---|---|---|
| MESSINA, John R. | B83 49 53 | |

| ORGANIZATION AND ARMED FORCE (If the accused is not a member of any armed force, state other appropriate description showing that he is subject to military law) | DATE OF BIRTH 11 August 1947 | PAY PER MONTH |
|---|---|---|
| AIRTEVRON FIVE NAF CHINA LAKE, CALIFORNIA U.S. NAVY | CONTRIBUTION TO FAMILY OR QUARTERS ALLOWANCE (MCM, 126h (2)) NONE | BASIC $ 330.90 |
| | | SEA OR FOREIGN DUTY $ NONE |
| | | TOTAL $ 330.90 |

### RECORD OF SERVICE

| INITIAL DATE OF CURRENT SERVICE | TERM OF CURRENT SERVICE |
|---|---|
| 6 February 1968 | 6 Feb 68 to 5 Feb 72--FOUR (4) YEARS |

PRIOR SERVICE: N O N E _____ (As to each prior period of service, give inclusive dates of service and Armed Force, if available.)
YEARS  MONTHS  DAYS

### DATA AS TO WITNESSES
(Summary Court Officer will line out and insert names as applicable (MCM, 79g) and initial changes)

| NAME OF WITNESS | ADDRESS | WITNESSES FOR PROSECUTION | WITNESSES FOR ACCUSED |
|---|---|---|---|
| JENSEN, Guy Dee | Route 1, Box 22, Santaquin, Utah 84655 | X | |
| STROH, Theodore J. AMEAA, USN | 52-A Card St., Naval Weapons Center China Lake, California 93555 | X | |
| KYLE, Vernon L. | Crime Lab, Kern County, Sheriff's Dept., Bakersfield, California | X | |
| THOMPSON, Shirley L. | 52-B Card St., Naval Weapons Center China Lake, California 93555 | X | |
| CHRISTOPHERSON, Teri L. | 13839 20th Ave., Seattle, Wash. 98168 | X | |
| HUNSAKER, G. | China Lake Police Dept., Naval Weapons Center, China Lake, Calif. | X | |
| McOMBER, James | Naval Investigation Service; Naval Air Facility, China Lake, Calif. | X | |

### DOCUMENTS AND OBJECTS
LIST AND DESCRIBE (If not attached to charges, note where it may be found)

Lab report of items seized in raid of 3 August 71

Statement of AN Guy Dee JENSEN

Statement of AMEAA Theodore J. STROH

(The above listed items maybe found at the Air Test and Evaluation Squadron FIVE, Naval Air Facility, China Lake, California.)

### DATA AS TO RESTRAINT

| NATURE OF ANY RESTRAINT OF ACCUSED | DATE | LOCATION |
|---|---|---|
| Confinement for his own safe keeping and the safety of others | 22 Sep 71 to 29 Oct 71 | San Diego Correctional Custody Facility, San Diego, California 92136 |

DD FORM 458  REPLACES EDITION OF 1 NOV 1957, EXISTING SUPPLIES WILL BE ISSUED AND USED UNTIL 1 JULY 1963 UNLESS SOONER EXHAUSTED
1 JUL 62
[A5913]

Charge: Violation of Article 92, Uniform Code of Military Justice

Specification 1: In that hospital Corpsman Third Class John R. Messina, U.S. Navy, Air Test and Evaluation Squadron FIVE, NAF China Lake, California, did, at China Lake, California, on or about 15 June 1971, violate a lawful general regulation, to wit: Article 1270, U.S. Navy Regulations dated 9 August 1948, as amended, by wrongfully selling fifteen (15) ounces of marijuana to Aviation Electrician's Mate Airman Apprentice Theo J. Stroh, U.S. Navy.

Specification 2: In that Hospital Corpsman Third Class John R. Messina, U.S. Navy, Air Test and Evaluation Squadron FIVE, NAF China Lake, California, did, at China Lake, California on or about 21 June 1971, violate a lawful general regulation, to wit: Article 1270, U.S. Navy Regulations dated 9 August 1948, as amended, by wrongfully selling eighteen (18) ounces of marijuana to Aviation Electrician's Mate Airman Apprentice Theo J. Stroh, U.S. Navy.

Specification 3: In that Hospital Corpsman Third Class John R. Messina, U.S. Navy, Air Test and Evaluation Squadron FIVE, NAF China Lake, California, did, at China Lake, California, on or about 30 June 1971, violate a lawful general regulation, to wit: Article 1270, U.S. Navy Regulations dated 9 August 1948, as amended, by wrongfully selling one (1) ounce of hashish to Aviation Electrician's Mate Airman Apprentice Theo J. Stroh, U.S. Navy.

Specification 4: In that Hospital Corpsman Third Class John R. Messina, U.S. Navy, Air Test and Evaluation Squadron FIVE, NAF China Lake, California, did, at China Lake, California on or about 12 July 1971, violate a lawful general regulation, to wit: Article 1270, U.S. Navy Regulations dated 9 August 1948, as amended, by wrongfully selling fifteen (15) ounces of marijuana to Aviation Electrician's Mate Airman Apprentice Theo J. Stroh, U.S. Navy.

Specification 5: In that Hospital Corpsman Third Class John R. Messina, U.S. Navy, Air Test and Evaluation Squadron FIVE, NAF China Lake, California, did, at China Lake, California, on or about 19 July 1971, violate a lawful general regulation, to wit: Article 1270, U.S. Navy Regulations dated 9 August 1948, as amended, by wrongfully selling twenty (20) ounces of marijuana to Aviation Electrician's Mate Airman Apprentice Theo J. Stroh, U.S. Navy.

Specification 6; In that Hospital Corpsman Third Class John R. Messina, U.S. Navy, Air Test and Evaluation Squadron FIVE, NAF China Lake, California, did, at China Lake, California, on or about 3 August 1971, violate a lawful general regulation, to wit: Article 1270, U.S. Navy Regulations dated 9 August 1948, as amended, by wrongfully selling twenty (20) ounces of marijuana and two hundred (200) amphetamines to Aviation Electrician's Mate Airman Apprentice Theo J. Stroh, U.S. Navy.

NAME, GRADE, AND ORGANIZATION OF ACCUSER
J. W. SEYMOUR, LTJG, USNR, AIRTEVRON FIVE, NAF, CHINA LAKE, CALIFORNIA 93555

SIGNATURE

AFFIDAVIT

Before me, the undersigned, authorized by lay to administer oaths in cases of this character, personally appeared the above-named accuser this 10th day of NOVEMBER , 1971 , and signed the foregoing charges and specifications under oath that he is a person subject to the Uniform Code of Military Justice, and that he either has personal knowledge of or has investigated the matters set forth therein, and that the same are true in fact, to the best of his knowledge and belief.

CDR, USN, AIRTEVRON FIVE
GRADE AND ORGANIZATION OF OFFICER

SIGNATURE

EXECUTIVE OFFICER, AIRTEVRON FIVE
OFFICIAL CHARACTER, AS ADJUTANT; SUMMARY COURT, ETC.
(MCM, 29a, and Article 30a and 136)

RICHARD L. WRIGHT
TYPED NAME

Officer administering oath must be a commissioned officer.

10 November 1971
DATE

I have this date informed the accused of the charges against him (MCM, 32I(1)).

JAMES W. SEYMOUR, LTJG, USNR, AIRTEVRON FIVE
NAME, GRADE, AND ORGANIZATION OF IMMEDIATE COMMANDER

SIGNATURE

AIR TEST AND EVALUATION SQUADRON FIVE, NAF, CHINA LAKE, CALIFORNIA    10 NOV 71
DESIGNATION OF COMMAND OF OFFICER EXERCISING SUMMARY COURT-MARTIAL JURISDICTION    PLACE    DATE

The sworn charges above were received at 0800 hours, this date (MCM, 33b).

C. BIRDWELL, JR., CAPT, USN
COMMANDING OFFICER
NAME, GRADE, AND OFFICIAL CAPACITY OF OFFICER SIGNING    SIGNATURE

IST INDORSEMENT

Headquarters, Eleventh Naval District, San Diego, California    12 JAN 1972
DESIGNATION OF COMMAND OF CONVENING AUTHORITY    PLACE    DATE

Referred for trial to the __general__ court-martial appointed by __my convening order__

Serial 17/0J of

__10 January__ 19 72 , subject to the following instructions:

See page 3a attached.

BY _____ of _____
COMMAND OR ORDER

J. W. WILLIAMS, JR.
Rear Admiral, U. S. Navy
Commandant, Eleventh Naval District
NAME, GRADE, AND OFFICIAL CAPACITY OF OFFICER SIGNING    SIGNATURE

I have served a copy hereof on each of the above-named accused, this 2ND day of MARCH , 1972.

BRIAN L SHARRATT LT, JAGC, USNR
NAME, GRADE, AND ORGANIZATION OF TRIAL COUNSEL    SIGNATURE

1 When an appropriate commander signs personally, inapplicable words are stricken out. 2 Relative to proper instructions which may be included in the indorsement of reference for trial, see MCM, 33j(1). If none, so state.

[A59153]

## APPENDIX B

I certify that the attached is a true copy of page 15 of the record of trial by General Court-Martial in the case of United States v. John R. Messina, Hospital Corpsman Third Class, United States Navy, tried on 7 March 1972.

DATED this 4th day of May, 1972.

    (s) A. J. JOHNS

       ARTHUR J. JOHNS

       Commander, JAGC, U. S. Navy

       Assistant District Judge Advocate

       Eleventh Naval District

       San Diego, California 92132

ACCUSED: No, Your Honor; I would break it down to a percentage of the cost.

MJ: O.K., but you did receive meaningful payment rather than a token payment?

ACCUSED: Yes, sir.

MJ: O.K. Now, again, six days later on the 21st of June, did you again sell marihuana to Theodore J. Stroh?

ACCUSED: Yes, Your Honor.

MJ: And was this 18 ounces on this occasion?

ACCUSED: Yes, Your Honor.

MJ: Now, on the 30th of June 1971, did you sell hashish to Theodore J. Stroh?

ACCUSED: Yes, Your Honor.

MJ: And was this one ounce of hashish at this time?

ACCUSED: Yes, Your Honor.

MJ: Now, where did these sales take place; all at the same place, or at different places?

ACCUSED: Your Honor, they took place at the same location, but at different—different—different residences or different place in that location. They all took place at China Lake.

MJ: On board the Naval Weapons Center at China Lake?

ACCUSED: That's right.

MJ: But at different locations on board the Naval Station?

ACCUSED: That's correct, yes, Your Honor.

MJ: Where did the transaction on the 15th of June take place; do you remember?

ACCUSED: No, sir, not specifically. But I might say that I did never receive a total amount of payment at one specific time at one specific place.