UNITED STATES

v.

Captain David C. ANDERSON, 462–70–3037 FV 46th Air Refueling Squadron Eighth Air Force (SAC).

ACM 21810.*

U. S. Air Force Court of Military Review.

4 Aug. 1975.

* Consult Table of Cases in Bound Volume by Name of Accused for appellate history.

Appellate counsel for the Accused: Colonel William E. Cordingly and Major John A. Cutts III. Captain Jerry A. Stimmel, Area Defense Counsel, filed an assignment of errors and brief on behalf of the accused.

Appellate counsel for the United States: Colonel C. F. Bennett and Captain Alvin E. Schlechter.

## DECISION

EARLY, Judge:

Despite his pleas, the accused was convicted by general court-martial of possessing marihuana, using and possessing marihuana while in the presence of enlisted members of the Air Force, and absence without leave, in violation of Articles 92, 133 and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 933, 886. He was sentenced to dismissal, confinement at hard labor for one year and total forfeitures. The convening authority disapproved the finding of guilty of possessing marihuana, but otherwise approved the findings and sentence as adjudged.

Twelve errors have been assigned for our consideration; however, our disposition of this case renders several of these issues moot. Others are without merit and will not be discussed. The first two errors considered concern jurisdiction over the accused and deprivation of the right to speedy trial. To set these in context, a pretrial history of the case is set out below.

The accused, a career reserve officer, applied for and was granted a date of separa-

tion of 24 January 1974. However, based on an investigation conducted by the Air Force Office of Special Investigations (OSI), the accused's squadron commander preferred a charge of violating a lawful general regulation against the accused on 17 January 1974. It was alleged that the accused sold marihuana to Staff Sergeant Earnest G. Burt, on or about 21 November 1973, at 238 West Michigan Street, Marquette, Michigan (the accused's home), in violation of Article 92, Code, supra. On 19 January 1974, the special order assigning a date of separation to the accused was rescinded, and on 22 January 1974, an investigation under Article 32, Code, 10 U.S.C. § 832, supra, was begun.

The only witness who provided any testimony supporting this charge was, in the opinion of the investigating officer, "completely unreliable and unwilling to cooperate in prosecuting [the] case." Further, evidence presented by the accused showed that he had an alibi for the charged date as he had been performing alert crew duties at K. I. Sawyer Air Force Base, Michigan, and had been restricted to the base until 0830 hours on 22 November 1974. Based upon this evidence, the investigating officer recommended that the charge not be referred to trial. During the investigation, statements given to agents of the OSI relating to other uncharged offenses committed by the accused were considered, but when the witnesses were brought before the investigating officer, they either refused to testify, based on an assertion of their rights under Article 31, 10 U.S.C. § 831, or provided "no information of an incriminating nature to be a sufficient basis for preferring additional charges." In his letter forwarding the investigation to the appointing officer, the base staff judge advocate, noting that "without grants of immunity, which can only be given by the officer exercising General Court-Martial Authority, I perceive no method of obtaining evidence to support the allegations," recommended that the investigation and charge be forwarded to the officer exercising general court-martial jurisdiction (the Commander, Second Air Force, now Eighth Air Force) with the rec-

ommendation that the charge not be referred to trial. Thereafter, the appointing authority did forward the investigation and charge with that recommendation but added that all material witnesses were in the area and would be available for trial.

Upon receipt of the investigation at Second Air Force, the officer assigned to prepare the pretrial advice, Captain Fletcher, was "having difficulties in coming to his conclusions." He felt that the charge should be dismissed but that the investigation disclosed other matters punishable under the Code. A conference was held between Captain Fletcher, Major Dranttel, the Chief of Military Justice, and Colonel Bedford, the Staff Judge Advocate, and it was the consensus of these officers that additional charges should be preferred and investigated. Major Dranttel then signed as accuser to seven additional specifications under Article 92 for selling and possessing marihuana (Specifications 1–7, Additional Charge I), and one charge under Article 133 for selling, using and possessing marihuana in the presence of enlisted personnel, at the accused's home, between 1 March and 29 November 1973. In addition, the original specification was amended to allege an attempt to sell marihuana to Sergeant Burt in conjunction with the accused's wife, in violation of Article 80, 10 U.S.C. § 880. This last action was taken because the consensus of the officers above was that there was a joint effort between the accused and his wife to commit the offense and because they felt that retaining the original charge in some form "would offer additional strength to the government position regarding jurisdiction to try [the accused] after his Date of Separation had passed." However, both Major Dranttel and Colonel Bedford opined that there was continuing jurisdiction even if the original charge was not among those eventually referred to trial. Captain Fletcher and Colonel Bedford signed the first pretrial advice, but Major Dranttel did not participate further in the case.

The original charge, as amended, and the additional charges were returned for fur-

ther investigation on 8 March 1974, and a second investigating officer was appointed. This investigation was to begin on 8 April 1974, but it was delayed by the issuance of a temporary restraining order from the Federal District Court. During this time, and before, the accused made repeated efforts to secure his discharge but was informed he could not be processed because of the pending charges. On 19 June 1974, the accused submitted a letter in which he offered to waive the second investigation and demanded a speedy trial. The second investigation was begun on 15 July and completed on 1 August.

The second investigating officer, concluding that the evidence supporting the amended original charge was "conflicting to an amazing degree," recommended its dismissal. He also recommended that the remaining charges, except for Specifications 4 and 7 of Additional Charge I, be referred to trial. The appointing authority recommended referral of the original charge, as amended, but otherwise concurred in the investigating officer's recommendations. The investigation was mailed to Second Air Force on 13 August but was lost in the mail. It was eventually located and remailed on 26 August 1974.

On 3 September, a second pretrial advice was prepared by Major Stuart, who had not been involved in the case, and was endorsed by Colonel Bedford. This advice, recommending that the original charge and Specification 4 of Additional Charge I be dismissed, was approved by the convening authority, and the remaining charges (now renumbered as Specifications 1–6, Charge I, and Charge II and its specification) were referred to trial on 3 September.

However, on 9 September 1974, the accused absented himself without leave and remained so absent until apprehended in Russellville, Arkansas, on 8 November 1974. He was returned to K. I. Sawyer Air Force Base and placed in pretrial confinement on 10 November 1974. On 11 November, an additional charge of desertion was preferred, and the third investigation was completed on 19 November. On 2 December,

after a supplemental advice was completed, the convening authority referred the additional charge to trial. After several delays at the request of both counsel, the case was brought to trial on 14 January 1975, with the results as previously shown.

The basic difficulty faced both in the several investigations and at trial was the recanting, repudiation and rejection by the various witnesses of the statements previously made to agents of the OSI. There was a general lack of consistency of the witnesses in their testimony at the two investigations and at trial. At times the witnesses refused to testify, and it is apparent that the trial counsel was not sure of the nature of the testimony, if any, that the witnesses would give on the stand even after he had just previously interviewed them.

Trial and appellate defense counsel assert that the court-martial had no jurisdiction over the accused because his date of separation had passed, and dismissal of the original charge, which, they concede, retained him past that date, was recommended by the investigating officer, the staff judge advocate and the appointing authority. They contend that the investigation should not have been forwarded to the convening authority, and that a new date of separation should have been assigned.

Jurisdiction to try members of the armed forces is defined in Article 2, Code, 10 U.S.C. § 802, supra. This Article provides:

The following persons are subject to this chapter:

(1) Members of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment; volunteers from the time of their muster or acceptance into the armed forces; inductees from the time of their actual induction into the armed forces; and other persons lawfully called or ordered into, or to duty in or for training in, the armed forces, from the dates when they are required by the terms of the call or order to obey it.

This is supplemented by paragraph 11*d*, Manual for Courts-Martial, 1969 (Rev), which states:

Jurisdiction having attached by commencement of action with a view to trial—as by apprehension, arrest, confinement, or filing of charges—continues for all purposes of trial, sentence, and punishment. If action is initiated with a view to trial because of an offense committed by an individual before his official discharge—even though the term of enlistment may have expired—he may be retained in the service for trial to be held after his period of service would otherwise have expired. Similarly, if jurisdiction has attached by commencement of action before the effective terminal date of self-executing orders, a person may be held for trial by court-martial beyond that terminal date.

■ Enlistment in the armed services does not create a contractual relationship between the individual and the Government but a status. *United States v. Blanton*, 7 U.S.C.M.A. 664, 23 C.M.R. 128 (1957). Hence, the passage of a date of separation does not operate by its own force to effect a discharge. *United States v. Klunk*, 3 U.S.C. M.A. 92, 11 C.M.R. 92 (1953). Jurisdiction, once attached, is not lost by a subsequent change of status of the accused even when the accused was no longer a member of the military establishment by reason of the termination of his commission by operation of law. *United States v. Brown*, 13 C.M.R. 856 (A.F.B.R.1953); see also, *Gorko v. Commanding Officer*, 314 F.2d 858 (10th Cir. 1963). As was held in *United States v. Westergren*, 14 C.M.R. 560, 580 (A.F.B.R. 1953):

> The rule has long been applied to reserve officers whose tours of active duty had expired before the completion of court-martial proceedings against them, provided, of course, that jurisdiction had theretofore attached by arrest, service of charges, or other action constituting commencement of proceedings with a view to trial. . . .

This jurisdiction continues to the completion of the appellate process even though the accused is by then no longer a military member. *United States v. Robertson*, 8 U.S.C.M.A. 421, 24 C.M.R. 231 (1957); *United States v. Sippel*, 4 U.S.C.M.A. 50, 15 C.M.R. 50 (1954).

■ Clearly, if jurisdiction continues over an officer whose commission terminates by operation of law, then it must continue over one whose date of separation has been cancelled by competent orders pending resolution of charges against him. Here the accused, a career reserve officer, was subject to military law at the time of the commission of the offenses charged and was amenable to the Uniform Code of Military Justice. See *United States v. Schuering*, 16 U.S.C.M.A. 324, 36 C.M.R. 480 (1966). His amenability to military law and court-martial jurisdiction did not cease merely with the passage of his previously established date of separation.[1] *United States v. Klunk*, supra. Indeed, his date of separation was rescinded by competent orders and no action of his own could affect his discharge. As was held in *Messina v. Commanding Officer*, 342 F.Supp. 1330, 1333 (S.D.Cal.1972):

> Indeed, the right of a serviceman to demand immediate release from active duty in such a case is contingent upon several factors, one of which is that no criminal proceedings be pending at the date his term of service is otherwise due to expire. In the event that charges are pending and some action with a view to trial has been taken, then the military has the statutory authority to continue automatically the member on active duty until final resolution of such charges.
>
> . . . . .
>
> The only proviso is that some action with a view to trial must be commenced prior to the date of termination of the enlistment contract.

Accord, *Roman v. Critz*, 291 F.Supp. 99 (WD Texas 1968).

Here, the accused was served with the original charge prior to his established date

---

1. We consider this fact significant only as it pertains to the later committed offense of absence without leave. See *United States v. Mansbarger*, 20 C.M.R. 449 (A.B.R.1955).

of separation, and investigation commenced promptly thereafter. His date of separation was properly rescinded. Jurisdiction over him continued until final resolution of the charges finally brought against him.[2] On the basis of these facts we hold that jurisdiction over the accused properly attached and presently continues.

 Trial defense counsel contended that the accused was denied his right to a speedy trial in contravention of Article 10, Code, 10 U.S.C. § 810, supra. We have carefully examined the entire chronology of this case and find no delay materially prejudicing the rights of the accused. The date of the accused's pretrial confinement (the date of apprehension from absence without leave) is only 66 days prior to the date of trial, and of this time some 27 days delay was at the request of the defense. Prior to this, some 75 days were expended awaiting resolution of the temporary restraining order. During the period prior to his absence, the accused was not under restraint except as to the general area of Marquette, Michigan, and was granted leave subject to this same general restriction. We do not find this in any way equivalent to the restraint considered in *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971); see also, *United States v. Sloan, et al.*, 22 U.S.C.M.A. 587, 48 C.M.R. 211 (1974). We find no prejudice in denying the accused's request for waiver of further investigation, particularly in view of the conflicting nature of the testimony which was already quite apparent. As in *Burton*, supra, at 170, we find that

> although the progress . . . was not fast, it was not so slow as to indicate either gross negligence or callous indifference. One of the longer delays in this period was attributable to the discovery of the need for amending the charges in order that they adequately allege offenses.

On the basis of our consideration of the record as a whole, we find the decision of the military judge denying the motion of the defense for dismissal of the charges for lack of a speedy trial to be correct in law and fact.

In the next assignment of error, the accused contends that there was a fatal variance between the pleading and proof of the Specification of Charge II. We agree. This specification, as amended during trial, alleges that the accused

> "did, at diverse times between 1 March 1973 and 29 November 1973, at 238 West Michigan Street, Marquette, Michigan, wrongfully and dishonorably, use and possess marijuana while in the presence of enlisted members of the United States Air Force, under circumstances as to constitute conduct unbecoming an officer and a gentleman."

At an Article 39(a), 10 U.S.C. § 39(a) session, the defense counsel moved for appropriate relief as to this charge in the "form of a request for a bill of particulars. . . ." He requested that the defense be given notice as to what events the prosecution intended to prove, noting that the specification was not specific as to times, dates, acts and as to the particular service members with whom the acts occurred. The trial counsel replied by stressing that the accused had access to the pretrial investigations and was quite aware of the Government's position. Defense counsel responded that it was difficult to prepare a defense against "an octopus of allegations."

Prior to ruling on the motion, the military judge asked what witnesses the prosecution intended to call and was told: "Meeker, Randall Jones and Sergeant Bowers." Defense counsel replied:

> . . . [T]he reason for my request is the fact that these three persons many times don't talk about themselves as actually being involved, but them seeing particular other individuals involved. The Article 32 discloses that those other individuals deny it ever happened. . .

---

2. All of the evidence buttressing the final charges, save only the absence without leave, was considered in the original Article 32 investigation. All that was done thereafter was redrafting of charges and specifications to fit the facts as related by the continuously recalcitrant, recanting witnesses.

If we knew what particular incidents they want to talk about we can go through, pick out the witnesses, and if we see somebody we want to subpoena, we could get the twix out now so by the time we get there the witness could be here.

The military judge then denied the motion.

At trial the witness Jones testified he saw the accused in the barracks room of a Patrick Lewis at K. I. Sawyer Air Force Base, Michigan, smoking what smelled like marihuana, but on cross-examination, he admitted that he was not an expert on marihuana and did not know whether or not the cigarette the accused was smoking was marihuana. Jones stated that he did not see the accused sell marihuana in his home (238 West Michigan Street), and refused to testify further on the ground of self-incrimination. After an out-of-court hearing on the issue of possible self-incrimination, Jones admitted that he observed the accused in his own home in possession of what he "assumed" was one pound of marihuana in a plastic bag.

The witness Meeker testified that at one time, not within the dates alleged, he observed the accused using marihuana at his (Meeker's) home. Subsequently all of Meeker's testimony was ordered stricken as not relevant by the military judge.

Sergeant Bowers testified that in October or November, 1973, the accused smoked marihuana with him at Bowers' home in Marquette, Michigan. On cross-examination Bowers stated that a marihuana cigarette was passed around a circle of people, and the accused had it in his hand but he did not remember whether the accused smoked it or not.

Prior to instructions, the defense counsel requested that the Government "be forced to elect which, if any, events on the basis of the allegations" it chose to offer to support the Specification of Charge II from the three "possibilities in this case:" the occurrence in the room of Airman Lewis, the possibility of possession of a pound of "something," and the possible use of marihuana cigarettes at the home of Sergeant Bowers. Defense counsel argued that the

court members might choose to convict under the specification on the basis of any one of the three events even though individual members might only believe in the occurrence of one or more and not the others. The military judge denied the motion.

Defense counsel also argued that the testimony of Bowers relating to the incident alleged to have occurred in his home be stricken, as such evidence was not in the Article 32 investigation, and, as such, was of the sort that prompted his earlier request for appropriate relief. In response, trial counsel sought to amend the specification to read "at or near Marquette, Michigan" instead of "238 West Michigan Street, Marquette, Michigan." The military judge denied both motions. However, after both counsel made closing arguments, trial counsel indicated his intention to argue, on rebuttal, that the court could by exceptions and substitutions find the accused guilty of Charge II and its Specification, for conduct unbecoming an officer and a gentleman "at or near Marquette, Michigan." Defense counsel objected but was overruled. Eventually the court by exceptions and substitutions found the accused guilty of the charge in accordance with the trial counsel's suggestions.

In analyzing the original specification, we see that it charged specific misconduct over a nine-month period with unnamed accomplices at a specific place. However, by its findings the court changed the specific place to a broader, less defined area. Evidence to support the specification showed the offenses taking place at another house and in a barracks room at K. I. Sawyer Air Force Base, Michigan, which is some 20 miles away from Marquette, Michigan.

■ First, we find no objectionable indefiniteness as to the allegation that the offenses occurred over an extended period of time as "it has long been considered proper in military law to charge as conduct in violation of the general article . . . a series of acts which, considered together, constitute a course of conduct of a particular type in violation of said article." *Unit-*

ed States v. Brossman, 16 C.M.R. 721, 730 (A.F.B.R.1954), pet. denied, 16 C.M.R. 292 (1954). Nor do we find a specification alleging a nonspecific place to be defective since it is "unnecessary to set out such details as the name of the street or the number of the building, if any, in which the offense takes place." *United States v. Means*, 12 U.S.C.M.A. 290, 30 C.M.R. 290, 292 (1961). The tests to be applied in a variance situation are:

(1) has the accused been misled to the extent that he has been unable adequately to prepare for trial, and

(2) is the accused fully protected against another prosecution for the same offense?

*United States v. Hopf*, 1 U.S.C.M.A. 584, 5 C.M.R. 12, 14 (1952).

■ Here the second test was met since the accused was convicted of a broader *specification* than that originally charged. However, on the posture of the evidence in this record, we hold that there was a fair chance that the accused was unable to adequately prepare for trial. Certainly the accused did all that he could to apprize the military judge and trial counsel of the nonspecificity of the specification. While we may commiserate with trial counsel and his variant witnesses, it remains the obligation of the Government to so plead that the defense is able to adequately prepare against the charges. As Judge Darden wrote in *United States v. Alcantara*, 18 U.S.C.M.A. 372, 40 C.M.R. 84, 85 (1969):

In light of the modern tendency to allow the pleading of legal conclusions and to eliminate detailed factual averments, [the particular language used] may well suffice, . . . "but resort to such pleading is always subject to a motion for further particularization."

In *United States v. Aloyian*, 16 U.S.C. M.A. 333, 36 C.M.R. 489, 493 (1966), the accused was confronted with a "veritable barrage of individual accusations." But the defense had a copy of the Article 32 investigation and copies of all statements made by the Government's witnesses and there was no indication by the defense counsel that he required any more particulars of the charges to prepare the defense case. The Court found that the time and place were plainly set out, and, on its face, each specification was sufficiently definite and certain as to all of the facts of the offense charged. However, the Court cautioned:

If the specification does not set out the place or places at which the several acts were allegedly performed, the accused may find it difficult to prepare his defense. . . .

Again, in *United States v. Means*, supra, at 292, fn. 1, although upholding an extremely broad specification, the Court stated:

It is, of course, open to an accused to demand further particulars if he believes he has insufficient information about the details of the offense charged.

These cases depend upon the information available to the accused prior to trial to sustain broadly drawn specifications; while here the specification was made even broader by the court after evidence of misconduct, not presented in the pretrial investigation, was introduced at trial. As Judge Ferguson said in *United States v. Nedeau*, 7 U.S.C.M.A. 718, 23 C.M.R. 182, 184 (1957):

Although we recognize the soundness of the rule which permits this Court to look to the record as a whole to determine the intent of the court-martial with respect to the announcement of their findings, such rule would appear to be for application where the announcement itself was ambiguous or misleading, rather than, as in this case, where the findings changed the nature and identity of the offense charged. Furthermore, the findings indicate that the court considered the evidence insufficient to establish the accused's guilt of the theft of the particular items alleged but sufficient upon which to base its findings that he stole other undesignated "foodstuffs." Thus it might well have been that the accused was found guilty of larceny of food items other than those specifically alleged and against which he was not prepared to defend. An exception by the court of part of a specification constitutes a finding that the accused is not guilty of what is alleged in the excepted language.

See also *United States v. Brown*, 7 C.M.R. 770 (A.F.B.R. 1953).

As was held in *United States v. Aloyian*, supra at 493:

The danger, if it exists, that the court members might not know they must agree on a finding as to each of the several acts reflected in the evidence does not affect the sufficiency of the pleading. At best, it may justify a clarifying instruction at the appropriate place in the trial.

Here, the accused sought "further particularization" (*United States v. Alcantara; United States v. Means*, both supra) and clarifying instructions (*United States v. Aloyian*, supra), but in vain. Instead, evidence of a previously unreported offense was admitted. That the accused was convicted on this evidence is demonstrated by the court's amended findings. Of the three witnesses called by the prosecution to establish the offense at issue, Jones' inability to identify the substance seen by him in Lewis' room and at the accused's home rendered his testimony insufficient to prove the charge, and Meeker's testimony was stricken. Thus, the accused's conviction must have been based on Sergeant Bowers' testimony alone, but the crime related by Bowers allegedly occurred in Bowers' home, not the accused's.

We are not faced with a variance between the *findings* and the proof, for the court, by its exceptions and substitutions, corrected that deficiency. What we do have is a material variance between the *pleadings* and the proof. By its findings, the court effectively acquitted the accused of the offense alleged and convicted him of a different offense, consonant with the evidence adduced at trial. As a result, the accused was convicted of an offense not embraced in the original pleadings, and this variance was fatal to the Government's case. *United States v. Dotson*, 17 U.S.C. M.A. 352, 38 C.M.R. 150 (1968).

The findings of guilty of Charge II and its Specification are incorrect in law and fact and are hereby set aside. The Charge is ordered dismissed. The findings

of guilty of the Additional Charge and its Specification are correct in law and fact. Reassessing the sentence on the basis of our partial disaffirmance, we find appropriate only so much thereof as provides for dismissal, total forfeitures and confinement at hard labor for six months. The findings of guilty and the sentence, as modified herein, are

Affirmed.

LeTARTE, Chief Judge, and ORSER, Judge, concur.