UNITED STATES

v.

Senior Airman Anthony C. WEEMS, FR 261–77–7152 United States Air Force.

ACM 23360.

U. S. Air Force Court of Military Review.

Sentence Adjudged 10 Dec. 1981.

Decided 1 April 1982.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain William H. Lamb.

Appellate Counsel for the United States: Colonel James P. Porter.

Before POWELL, Senior Judge, and KASTL and MAHONEY, Appellate Military Judges.

DECISION

MAHONEY, Judge:

The accused stands convicted, pursuant to his pleas, of two specifications of larceny, in violation of Article 121, 10 U.S.C. § 921,

Uniform Code of Military Justice [hereinafter U.C.M.J.]. His sentence extends to a dishonorable discharge, confinement at hard labor for three years and six months, forfeiture of $200.00 per month for 42 months, and reduction to airman basic.

We note an irregularity in the plea and findings which warrants brief discussion. In Specification 1 of the Charge the accused was charged with larceny on 19 August 1981 of four "remote controls" valued at $1,795.00 each and one video cassette recorder, valued at $5,493.00, of a total value in excess of $100.00. In his plea of guilty, accepted by the military judge, the accused excepted each of the foregoing items, and substituted therefor "three unknown items."

In its attempt to establish the identity of the stolen items the prosecution called special agents of the Office of Special Investigations [OSI] who described in general an undercover operation designed to ferret out participants in theft rings at Clark Air Base in the Philippines. The ring in this case involved Filipino civilian employees in the supply and transportation sections. An OSI undercover agent worked his way into the ring, and traced the items listed in Specification 1 from their initial diversion in supply channels to their delivery by government truck to one of the Filipinos, who drove off with the truck and the loot. Other OSI agents recounted their observations of the truck as it traveled to the on-base Knights of Columbus Hall, which apparently served as a staging area for stolen government property. There they observed that the truck was unloaded, and that later, at the same location, the accused drove up in his privately owned automobile, and loaded certain items into the trunk of the auto. Both the unloading and the loading were done with the assistance of the Filipino janitor at the Knights of Columbus Hall. In between those events, the janitor was observed to be hauling outer wrappings, of the type used for the stolen items, from the building to a dumpster.

Although the OSI agents were certain of the number and identity of the items on the truck, they were able to see only two items loaded into the accused's trunk, and they did not know the identity of those items. The agents followed the accused's auto off base, but they lost him before he arrived at his destination. Thus, proof was lacking as to the precise identity of the items stolen by the accused as an aider and abettor. The accused's responses to the military judge during the guilty plea inquiry and his written confession both indicate that the accused transported three wrapped stolen items but that he did not know what they were. For his role in the theft he was paid 3,000.00 pesos, valued at about $360.00.

Based upon the record in this posture, the military judge entered findings, by exceptions and substitutions, corresponding to the accused's plea.[1] At the outset, we note that although the accused was not shown to know the contents of the packages containing the "three unknown items" there is nothing in the record inconsistent with their aggregate value being in excess of $100.00. Indeed, considering the accused's share of the theft, it is clear that the value of the items was well in excess of $100.00.

The issue we confront is whether, considering the changes to the specification, the accused was convicted of a different offense than that with which he was charged, and if so, whether he was thereby prejudiced. The seminal case is *United States v. Nedeau*, 7 U.S.C.M.A. 718, 23 C.M.R. 182 (1957). There, a Marine sergeant pled not guilty to stealing a veritable shopping list of supplies from the storeroom of an Italian restaurant in Baltimore. At the suggestion of the trial counsel, and due to some confusion as to the exact identity and amounts of items stolen, the court-martial found the accused guilty, by excepting all of the individual items and substituting therefor the word "foodstuffs." Like our

---

1. Although the general findings on the specification correspond precisely to the accused's plea by exceptions and substitutions, the military judge failed to indicate whether his findings were based upon the accused's plea, the evidence presented, or both.

predecessor Board of Review in *United States v. Brown*, 7 C.M.R. 770 (A.F.B.R. 1953), the Court of Military Appeals found that the accused had been acquitted of that with which he was charged, and convicted of stealing things with which he had not been charged. In reversing those convictions the Court and Board pointed out that each accused was prejudiced because he came into court prepared to defend against larceny of certain specific items, but was convicted of stealing something else, with which he had not been charged.

In the case before us, it is not altogether certain that the accused was convicted of stealing different items than those with which he was initially charged. On the record before us we might conclude that although somewhat inartfully done, the exceptions and substitutions merely reduced the number of stolen items from five to three, and expressed the accused's position that he didn't know *which* three of the five he stole. However, the record is equally susceptible to other interpretations, particularly since, as the trial defense counsel pointed out in his findings argument, there is no evidence concerning what was in the Knights of Columbus Hall before or after the truck delivery.[2]

 Thus, we can not find beyond reasonable doubt that the "three unknown items" of which the accused stands convicted were among the items alleged in the specification upon which the accused was arraigned. Ordinarily, where the accused is convicted of an offense not embraced within the original pleadings the variance is fatal to the government's case. *E.g., United States v. Anderson*, 1 M.J. 498 (A.F.C.M.R.1975). However, the cases cited thus far all involved a conviction contrary to the accused's pleas. In this case, the conviction is precisely in accord with the accused's plea. Obviously, the accused was neither surprised nor unprepared to meet the charge of which he stands convicted.[3]

Moreover, he is fully protected from further prosecution for theft of any three items of government property on 19 August 1981. The maximum penalty and gravamen of the offense were unaltered by the changes to the specification, and nothing in the record is inconsistent with the findings of guilty. We find, therefore, that despite the variance between the offense alleged and that established by the accused's own lips, we need set aside neither the plea nor the findings. *United States v. Felty*, 12 M.J. 438 (C.M.A.1982).

The findings of guilty and the sentence are correct in law and fact and, based upon the entire record, are

AFFIRMED.

POWELL, Senior Judge, and KASTL, Judge, concur.

---

2. The military judge elected not to make special findings which might have illuminated his thought process on this point. Manual For Courts-Martial, 1969 (Rev.), paragraph 74*i*.

3. Alternatively, we could construe the accused's plea as a consent to trial upon the unsworn specification thereby created. *United States v. Sledge*, 48 C.M.R. 869 (A.C.M.R.1974).