**UNITED STATES**

v.

**Airman First Class Steven F. MANGINELL, FR 195–60–4384, United States Air Force.**

**No. ACM 28959.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 16 Aug. 1990.

Decided 14 March 1991.

Appellate Counsel for the Appellant: Lieutenant Colonel Jeffrey R. Owens and Captain Richard W. Aldrich.

Appellate Counsel for the United States: Colonel William R. Dugan, Jr.; Lieutenant Colonel Brenda J. Hollis and Major Paul H. Blackwell, Jr.

Before MURDOCK, KASTL, O'HAIR and MILLS, Appellate Military Judges.

PER CURIAM:

The uncommon crime of looting is at the nub of this appeal. We affirm.

### Operation Just Cause

Airman First Class Manginell was a security policeman at Norton Air Force Base, California. He was selected for temporary duty during Operation Just Cause, a military expedition in Panama against hostile forces loyal to General Manuel Noriega.

Manginell was assigned to guard the captured Tocumen International Airport in Panama City. General Noriega's troops in the area continued to resist.

While serving as a night guard to secure a warehouse at Tocumen airport, Manginell appropriated a camera and four watches.

At trial, Manginell pleaded guilty to two specifications of looting under Article 103, UCMJ, 10 USC § 903. The prosecution prepared a detailed brief supporting the providence of Manginell's guilty pleas to looting. After completing his inquiry, the military judge found Manginell guilty in accordance with his pleas [1].

Before us, Manginell argues that looting requires a taking accompanied by force or violence. Since that requirement was missing here, he insists that his conviction must fall.

### Historical Analysis

Looting is a military offense rooted deeply in both the law of chivalry and the law of war. Winthrop calls particular attention

---

1. The Government had charged the same actions alternatively as larceny under Article 121, UCMJ, 10 USC § 921. During the court-martial, the prosecutor stated that he had no authority to withdraw the two specifications but that the Government elected to offer no evidence on them. The military judge found the appellant not guilty of these alternative larceny offenses.

to a clearcut prohibition of looting in Article of War XXV of King James II in 1688. His famous treatise also notes American milestones: (1) Brigadier General Wayne's 1779 capture of Stoney Point—Congress approved the division of captured military stores among "the gallant troops;" (2) 1864 Civil War rewards to militiamen dispersing "bushwhackers"—watches and arms were viewed as trophies; and (3) a long history of prize payments in the United States Navy. *See* Winthrop, Military Law and Precedents (1920 ed.) 557; *see also* Dudley, Military Law and the Procedure of Courts–Martial (1915) 333–334.

In the 1921 and 1928 Manuals for Courts–Martial, looting and similar conduct was punishable under Articles of War 79 and 80. Research reveals few cases under those articles. Among them is an opinion crucial to our analysis, *United States v. Ruppel*, 61 Bd.Rev. 291, 306 (1946). The Board of Review assessed misconduct of an officer in post-war Austria. Reasoning in part from the laws of war, the Board commented that neither force nor violence was necessary to convict of looting.

Good arguments can be made that the *Ruppel* analysis is dicta. Such arguments are academic in light of what occurred next. In the 1951 Manual for Courts–Martial, looting was prohibited by Article 103, a hybrid of old Articles of War 79 and 80. *Ruppel is specifically cited in the legislative history for the proposition that looting need not necessarily be accompanied by force or violence.* *See* Legal and Legislative Basis, Manual for Courts–Martial 1951, 262.

Despite that language, a 1950's Air Force benchbook listed "force or violence" as a necessary predicate to prove looting. *See Court–Martial Instruction Drafting Guide*, Department of the Air Force, Article 103.7 [2] By 1971, however, "force or violence" was neither listed as an element nor defined. *See* Air Force Manual 111–2, *Court–Martial Instructions Guide*, Instruction 3–59 (16 October 1971).

In contrast, the Army apparently continued to find force or violence an indispensable requirement. *See, e.g.,* DA Pam 27–9, *Military Judges' Guide*, Instruction 4–59 (May 1969). That situation remains virtually unchanged in the current Army iteration. *See* DA Pam 27–9, *Military Judges' Benchbook*, Instruction 3–59 (May 1982). The Army Benchbook "may be used as a procedure guide" for Air Force courts-martial. Air Force Regulation 111–1, *Military Justice Guide*, para. 12–3 (30 September 1988).

The 1984 Manual for Courts–Martial fails to mention "force or violence" as either an element or part of the definition of looting. Since 1951, a handful of modern courts-martial [3] have included looting as an incidental offense among others but there has been no solid analysis of that crime.

The Manual lists three elements for the sort of looting alleged here: (a) that the accused engaged in the act by unlawfully seizing or appropriating certain property, public or private; (b) that it was located in enemy or occupied territory; and (c) that it was left behind or owned by the enemy, an occupied state, an inhabitant of the occupied state, or the like. *See* MCM, Part IV, para. 27b(4) (1984).

### Holding

We hold that the appellant was properly convicted of looting. The current Manual for Courts–Martial lists three elements for this crime. They are found here. The definition of "looting," to mean unlawfully seizing property by force or violence as contained in the *Military Judges' Benchbook*, need not be followed; the *Benchbook* is not mandatory for Air Force trials. Freed of that consideration, we may accept the analysis offered in *Ruppel* and adopted

---

**2.** The Guide lists no year of publication. Major General Reginald C. Harmon is listed as The Judge Advocate General. Since the Guide was intended for use with the 1951 Manual, its publication probably is between 1951 and General Harmon's retirement in March 1960.

**3.** *See, e.g., United States v. Wolfe,* 37 C.M.R. 571 (A.B.R.1966) (deployment of 82d Airborne Division to Dominican Republic; looting incidental to other issues). *See also* Philos, Handbook of Court–Martial Law (1951) 410.

by those who created the new Article 103. *See* Legal and Legislative Basis, Manual for Courts–Martial 1951, 262. In addition, the term "looting" is clearly defined at MCM, Part IV para. 27c(4) as "unlawfully seizing or appropriating property." It was further defined for purposes of this case in the trial counsel's brief written to show the propriety of accepting the guilty plea: "to carry off as loot or booty."

We thus view this appellant's guilty plea to looting as intelligent and knowing. He had no quarrel with the Government's definition of the crime, which we find correct.[4]

■ The approved sentence is a bad conduct discharge, six months confinement, forfeiture of $400.00 per month for six months, and reduction to airman basic. In addition to taking the camera and watches, Manginell was also found guilty (in accord with his pleas) of larceny of a California vehicle registration sticker and a minor dereliction of duty. We think the sentence entirely appropriate ... perhaps even generous.[5]

The findings of guilty and the sentence are correct in law and fact and, upon the basis of the entire record, are

AFFIRMED.

Senior Judge KASTL (dubitante):

While we affirm, I am not particularly pacific about the ultimate fairness of the result. Yes, Manginell is technically guilty; but I hold considerable reservations about the situation: *I say the "wide-open" Air Force definition of looting fails to distinguish between: (a) minor misconduct such as taking a watch or an enemy handgun as a war trophy; and (b) serious crime, such as an unprincipled use of force or violence so outrageous that it merits a possible maximum sentence of life imprisonment.*

The decision to prosecute this case as looting fails to rest on a rational standard which separates the serious from the everyday offense. The prosecution convinced the military judge to depart from the Air Force's usual reliance on DA Pam 27–9, *Military Judges' Benchbook*. Instead, the prosecutor turned to the Manual for Courts–Martial discussion. That omits the requirement for "force and violence."

To my mind, such an approach offers the convening authority unlimited discretion to charge larceny or looting. Without articulable standards, it thus leaves to caprice whether one particular accused will face five years and another a life sentence.

One might respond that several areas of the law give the Government an election— *e.g.*, assault and aggravated assault; or various degrees of homicide. But such examples are grounded in objective degrees of culpability, measured by relatively clearcut standards. In contrast, the difference between larceny and looting—if the prosecution argument is correct—is quixotic.

In sum, I think the prosecution's theory sets too low a standard for the Air Force— virtually every appropriation where one can postulate an "enemy" lurking somewhere in the vicinity creates the opportunity to charge looting, with its possible lifetime sentence. Here is a shapeless legal concept which fails to distinguish between the truly egregious and the routine.

I would make three further points:

1. We have decided at least three other cases in recent months concerning security policemen who stole while acting as guards during Operation Just Cause. Specific citations are unnecessary; the point is that all the others passed muster as simple larce-

---

4. We have no particular concern with the concept of "time of war" *vis-a-vis* the Panamanian expedition. *See* MCM, App. 21, Rule 103, A21–5 to 21–6 (1984).

5. The final prosecution sentencing argument cautioned that the people of Central America were looking to United States combatants to perform honorably. We will presume this argument impermissible under *United States v.* *Cook,* 11 U.S.C.M.A. 99, 28 C.M.R. 323 (1959) and *United States v. Mamaluy,* 10 U.S.C.M.A. 102, 27 C.M.R. 176 (1959). We also presume that the military judge knew and followed the law. *United States v. Harper,* 22 M.J. 157, 164 (C.M.A.1986). Even if we were to find error, we would view it as harmless in view of the light sentence approved.

nies of private property. I see nothing to distinguish today's case as factually more serious. *What logical reason is there to treat similar accuseds in a dissimilar fashion?*

2. At the end of the day, a court-martial order should reflect precisely what an accused did, not distort the record. *See United States v. Blucker*, 30 M.J. 690, 691 (A.C.M.R.1990). Here, others involved with larceny during Operation Just Cause will receive a court-martial order showing they were thieves. Manginell will have an order to inform potential employers that he was guilty of something akin to a war crime. His conduct differs little from the other airmen ... but his record now is facially far more reprehensible.

3. While Manginell's conduct adds up to "looting" in the Air Force, the definition is chameleonic.[1] In the next contested case, what should a careful military judge do if the accused pleads not guilty and requires the Government to define "looting?" Is the Manual definition all encompassing? Why is the standard different between the Army and the Air Force?

The Bouvier, Ballentine, and Black legal dictionaries contain no definition of "looting." Neither is there useful analysis in American Jurisprudence or Corpus Juris Secundum. We have used the word as a noun, to mean "ill-gotten gains." *See United States v. Weems*, 13 M.J. 609, 610 (A.F.C.M.R.1982).

Civilian courts often use the word "looting" as a synonym for "larceny." *See Miller v. Alabama*, 405 So.2d 41 (1981); *Arizona v. Gunter*, 100 Ariz. 356, 414 P.2d 734 (1966). Sometimes, it envisions "civil disorder" or vandalism, as in *Shankles v. Costa Armatori*, 722 F.2d 861, 863 (1st Cir.1983). Still other times, "looting" is taken to mean action occurring during a tumult or riot. *See YMCA v. United States*, 395 U.S. 85, 89 S.Ct. 1511, 23 L.Ed.2d 117 (1969) (rioting and looting during a prior United States expedition in Panama); Annot., 39 A.L.R.

4th 1170 (1985). Finally, the word sometimes suggests a completely different concept—"insider" skimming of a corporation. *See United States v. Feldman*, 853 F.2d 648 (9th Cir.1988).[2]

To repeat for emphasis, it seems irrational that Army and Air Force warriors engaging together in combat operations should be judged by different standards for the same wrongdoing. I suggest that the Code Committee established under Article 67(g), UCMJ, 10 USC § 867(g) reexamine Article 103 and the Manual with an eye to refining for all the definition of "looting." The legislative history is thin. *Ruppel* is scant authority, and I surmise there has been little modern thought to this subject.

Judge KASTL participated prior to his retirement.

---

1. "... words are chameleons, which reflect the color of their environment." J. Learned Hand in *Commissioner of Internal Revenue v. National Carbide Corp.*, 167 F.2d 304, 306 (2nd Cir.1948).

2. This semantic morass does not technically bar Manginell's conviction. Here, everyone conceded what the word "looting" meant, and the appellant pleaded guilty to that offense.